**In Re the Marriage of Roxanne Marie TIGGELAAR, Appellant,**

v.

**Duane Kyle TIGGELAAR, Respondent.**

**No. C5–88–1453.**

Court of Appeals of Minnesota.

Dec. 27, 1988.
Review Denied Feb. 10, 1989.

Neal R. Scharmer, McRae and McRae, P.A., Bemidji, for appellant.

Thomas T. Smith, Smith, Carpenter, Benshoof & Klein, P.A., Bemidji, for respondent.

Heard, considered and decided by FORSBERG, P.J., and CRIPPEN and NORTON, JJ.

## OPINION

FORSBERG, Judge.

Roxanne Tiggelaar appeals the trial court's modification of child custody, which removed her four-year-old son from her custody and placed custody with Duane Tiggelaar, her ex-husband. We reverse.

## FACTS

Roxanne and Duane Tiggelaar were married in South Dakota in 1983. They had one child, Brent, born in 1984. They separated late in 1984 when Brent was nine months old. The dissolution, granted in 1985, awarded joint legal custody and Roxanne was awarded physical custody of Brent.

At the time of the divorce Roxanne was pregnant. This was not Duane's child. Duane had knowledge of her pregnancy at the time of the divorce and consented to placing physical custody of Brent with Roxanne. Roxanne had a third child in December of 1987. Roxanne was the primary caretaker for Brent throughout his life and has had physical custody of all three children.

Although Roxanne moved to Bemidji, Minnesota, Duane continued his visitations with Brent by commuting from Sioux Falls, South Dakota. Duane has been regular and consistent in visiting Brent. In early 1988, Duane requested a hearing in Beltrami County on change of custody. The hearing was held and the court granted Duane's request, citing Roxanne's two subsequent illegitimate children and the fact that she relies upon AFDC for their support. Roxanne's motion for a new trial was denied and the court entered an order placing immediate custody of Brent with Duane. Brent has been with Duane in South Dakota since March 1988. Roxanne appeals.

## ISSUE

Did the findings of fact establish that circumstances arising since the original custody order endanger the child's physical

or emotional health and justify a change in custody to serve the child's best interest?

## ANALYSIS

The applicable statute states:

(d) If the court has jurisdiction to determine child custody matters, the court shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or the custodian and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by the prior order unless:

\* \* \* \* \* \*

(iii) The child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Minn.Stat. § 518.18(d)(iii) (1986).

We must first examine changes in circumstance since the time of the original custody order. There have been a number of changes in circumstances. Roxanne moved to Bemidji, Minnesota with Brent. The record does not reflect any objection to this move, however.

■ Additional changes occurred when two more children were added to Roxanne's household. Roxanne was pregnant with her second child when the final divorce decree was granted. The record reflects that Duane had knowledge of Roxanne's pregnancy at the time but still agreed to placing physical custody with Roxanne. Duane believed that the addition of the third child, however, threatened Brent's well-being. The court also seemed to take offense at the addition of a third child, for in a memorandum attached to the court's order of April 29, 1988, the court found that it was:

significant that petitioner is unable to support the children she has, even though she was receiving AFDC for her second child she chose to have a third child and she must receive AFDC for this one as well.

The record did not establish or support the proposition that the addition of two more children harmed or deprived Brent in any way. Nor was it established that Brent was harmed or deprived because his siblings were dependent on AFDC.

■ Next we must consider whether the changes in circumstances were such that the child's environment now endangered his physical or emotional health. Duane testified that there were various men going in and out of Roxanne's household and that he objected to this environment for his son. There was no evidence offered, however, to substantiate the alleged male visitors. The trial court also notes that such evidence is lacking:

Initially the Court should note that petitioner is correct when she claims that there was no evidence that she allowed various men to spend the night in her home. The Court mistakenly made that finding of fact. There was also a passing reference to that allegation in the Court's Memorandum. However, those claims were never considered by the Court and were given no real weight by the Court in reaching its decision. The one statement in the Memorandum reads, it is not good for Brent to be exposed to the various strangers Roxanne invites into the home.

Other reasons, stated or implied, were that Roxanne depended on AFDC for support, has not obtained employment, and has had two other children by different fathers. These are not valid reasons to modify an existing child custody order.

■ There is considerable evidence that Roxanne is a good parent. Especially important is the testimony offered by the Headstart Teacher, Lenora Dingman. Dingman has visited Roxanne's home 21 times in the course of her work with Brent and Roxanne. Dingman testified about her positive observations of Roxanne's and

Brent's interactions; her assessment of Brent's educational and social development, as well as his mental, emotional, physical and intellectual well-being. Dingman found that Brent was developing appropriately for a four year old and found that Roxanne was 100% supportive and cooperative. Dingman testified that Roxanne was "probably one of the better ones" when speaking about Roxanne's and Brent's regularity of attendance. Dingman also testified that she found in Roxanne's home "things are picked up and put away, there is nothing that the kids get—could get into that would be harmful to them." She testified that Brent was "always clean when I see him" and that his clothes were "fine—they are clean" and that he was dressed appropriately for the weather. In addition, Brent was "well-mannered—he listens, he has respect."

There is nothing in the record that clearly shows that it is in Brent's best interest to be taken from Roxanne after spending all of his life in her care. The court must make particularized findings of fact regarding the child and the custodial parent before a change in custody can be granted. "Continuity of care with the primary caretaker is not only central and crucial to the best interest of the child, but is perhaps the single predicator of a child's well-being * * *." *Pikula v. Pikula*, 374 N.W.2d 705, 712 (Minn.1985).

The trial court offers no basis that whatever harm likely to be caused by a change of environment can be outweighed by the advantages of a change. Instead the court talks of material advantages, disadvantages, and status: Duane's mother's four bedroom home; Duane's jobs and income; Roxanne's unemployment; her two illegitimate children; and Roxanne's purported promiscuous social life.

## DECISION

■ The trial court erred in modifying a prior custody order where the evidence failed to show that the changes in circumstances caused physical or emotional harm or impaired the child's emotional development. Courts are mandated to retain the custodian established by a prior order unless there is a showing that the child's present environment endangers his physical or emotional health. There has been no showing here. We cannot take children away from a custodial parent as punishment for having more children or for having the misfortune to have to subsist on AFDC.

REVERSED.

CRIPPEN, Judge, concurring specially.

The appellate decision here upholds public policy well settled in Minnesota since 1978. When a change of custody is proposed, primary attention must be given to the harm involved in separating a child from a custodial parent, and modification can only occur when that harm is offset by evidence the child's present circumstances are endangered. Minn.Stat. § 518.18 (1986), *amended by* 1978 Minn.Laws ch. 772, § 44. Following enactment of this statutory law, the Minnesota Supreme Court has consistently upheld the central importance of continuity of care for children, especially those who are very young. *See Auge v. Auge*, 334 N.W.2d 393, 399 (Minn.1983).

I join in the opinion of the panel to reverse a child custody modification which is not permitted by Minnesota law. While the appellate courts rarely disturb trial court custody decisions, such a result can and does occur to correct impermissible changes of custody.

Appellate error-correcting under section 518.18 falls short of faithfully upholding the mandate for continuity of care which has been given by the legislature and the supreme court. Here, late in December, an opinion issues to return custody of a four-year old child who was separated from his custodial parent late in March 1988. Especially for the child, this intrusion into the stability of his circumstances is immensely important. In fact, regardless of other circumstances in the life of the child, a judicial intrusion of this kind might itself be counted a significant danger to the child's emotional health and development.

While various attempts have been made to expedite review of child custody decisions, more scrutiny is required on the issue of delay following decisions for change of custody.

The delay in this case could have been somewhat shortened. The case was pending before the trial court on post-trial motions for 40 days, and six months elapsed between the beginning of the appellate process and the issuance of a decision. Respondent's insistence on oral arguments avoided shortening the appellate process by about six weeks time, and appellant unnecessarily delayed initiation of the appeal for 60 days after the trial court's last order was issued. Still, under almost ideal circumstances, post-trial motions and appellate process will take six or seven months after the trial court's modification decision.

Avoidance of the peril of delay rests mostly with the trial courts. In all custody cases, the trial court is left with undivided discretion to determine whether its custody order will be stayed during the period of appellate review. *See Petersen v. Petersen*, 296 Minn. 147, 149, 206 N.W.2d 658, 659–60 (1973). When the custodial placement of the child is changed, it is essential that the trial courts liberally allow stay of proceedings during the time post-trial motions and appeal proceedings are pending.