**In re the Matter of the Petition of: Ervan VALENTINE and Elaine Roberta Weiler, Petitioners, Appellants,**

v.

**Victoria LUTZ, Respondent,**

**Washington County Community Services, Respondent.**

**No. CX–93–6.**

Supreme Court of Minnesota.

March 11, 1994.

Wright S. Walling, Gary A. Debele, Minneapolis, for appellant.

Kenneth J. Jacobs, Westline Center, Forest Lake, for Victoria Lutz.

Douglas H. Johnson, Asst. Washington County Atty., Stillwater, for Washington County.

Mark J. Vierling, Stillwater, for guardian ad litem.

James Moberg, Stillwater, for J.A.D.

KEITH, Chief Justice.

The issues in this case involve what rights are available to former foster parents who desire to obtain the custody of a child who had lived in their home for over four years. We affirm the trial court and the court of appeals, 501 N.W.2d 667.

J.A.D. was born on May 12, 1987, the youngest of four children. In February 1988, Washington County Department of Social Services (Washington County), in a Child in need of Protective Services proceeding (CHIPS), was granted temporary custody of all four children because of parental neglect. The three older children were temporarily placed with relatives, but J.A.D., because of his special needs, was placed with the appellants, Ervan and Elaine Weiler (Weilers). J.A.D. has idiopathic thrombocytopenic purpura (ITP), a blood disorder which reduces the blood's ability to clot, and an attention deficit disorder. Fortunately, the ITP has improved so that J.A.D. now has little or no risk of having dangerous bleeding. J.A.D. adjusted well in the Weilers' home.

By December 1990, the three older children had been reunited with their mother, Victoria Lutz. In September, 1991, the mother requested that if J.A.D. was not going to be returned to her custody, that Washington County consider having her sister and brother-in-law, Sharon and Al Haggenmiller (Haggenmillers), adopt the child. A guardian ad litem had been appointed for J.A.D. on July 24, 1991, and a home study of the Haggenmillers was commenced that fall. In February 1992, the study was completed and it recommended that the Haggenmillers should be considered for the adoption of J.A.D. Visitation by J.A.D. with the Haggenmillers was commenced in March of 1992.

The mother and father of J.A.D. voluntarily agreed to terminate their rights to this boy on April 29, 1992. This was done with the mother's understanding that all efforts would be made by Washington County to place J.A.D. with the Haggenmillers.

Upon notification by Washington County of the impending move of J.A.D. from their home and after seeking legal counsel, the Weilers, on June 2, 1992, petitioned for the adoption of J.A.D. and secured an ex parte order granting them custody of J.A.D. pending further order of the court. They also had J.A.D. evaluated by a licensed psychologist who advised that a change in home environment would be highly disorganizing to J.A.D., both emotionally and cognitively. The child was also seen by a medical doctor with expertise in child development who advised that because of J.A.D.'s physical and psychological problems, it was in his best interest to remain with the Weilers.

On June 17, 1992, the Haggenmillers filed a petition for adoption of J.A.D.

On June 24, 1992, the trial court scheduled an evidentiary hearing on the Weilers' adoption and ordered the custody of J.A.D. returned to Washington County.

Victoria Lutz then moved to vacate the order terminating her parental rights to J.A.D., alleging that Washington County had failed to follow up on the placement of J.A.D. with the Haggenmillers. After an evidentiary hearing, the court, on August 20, 1992, with the agreement of the guardian ad litem and without objection by Washington County, vacated the April 29, 1992, order terminating Ms. Lutz' parental rights.

On August 23, 1992, the Weilers petitioned for custody of J.A.D. under Minn.Stat. §§ 518.156 and 518.17 (1992). Accompanying

the petition was a motion requesting that: (1) they receive temporary custody of J.A.D., (2) supervised visitation be established between J.A.D. and his mother, (3) the court require Washington County to conduct a custody evaluation of the Weiler home, and (4) the CHIPS proceeding be consolidated with the requested evidentiary hearing on custody. They also filed and received an ex parte order granting them temporary custody of J.A.D. This order was promptly vacated on August 25, 1992, when the court learned that a prior decision of that court had previously refused to grant the Weilers physical custody.

On August 27, 1992, a hearing was held reviewing the CHIPS proceeding. The Weilers were present but did not ask to intervene. The court ordered that J.A.D. be placed with the Haggenmillers, and that the Weilers be granted visitation rights with J.A.D. At that time, the Weilers agreed to dismiss their adoption petition.

On August 28, 1992, J.A.D. was placed with the Haggenmillers and he has lived with them since that date. J.A.D. has done well adjusting to his new home. At the request of the guardian ad litem, a therapist has worked with J.A.D. since July, 1992, to help the boy make the transition from the Weilers' home to the Haggenmillers' home.

On September 23, 1992, the Weilers served a Notice of Intention to Intervene and a Supplementary Notice of Motion and Motion asking: (1) for the right to intervene in the CHIPS proceeding involving J.A.D., (2) for a court order transferring custody of J.A.D. to them or, in the alternative, granting them visitation, and (3) for the appointment of a new guardian ad litem. A hearing was held on September 30, 1992. By order of the court dated December 15, 1992, all of the Weilers' motions were denied.

The court of appeals affirmed the trial court on all issues. In their petition for review, the Weilers assert: (1) that they have a right to intervene in the CHIPS proceeding under both the Minnesota Rules of Civil Procedure and pursuant to the appropriate juvenile rules and Minnesota statutes relating to CHIPS proceedings, and (2) that the trial court applied the wrong statute in determining whether they are entitled to an evidentiary hearing concerning the custody of J.A.D.

## I.

■ The Weilers contend that Minnesota Rule of Civil Procedure 24.01 mandates that they be allowed to intervene in this case. The Rule reads:

Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Minn.R.Civ.P. 24.01 (1994). The Weilers contend that the "interest" which allows them to intervene under Rule 24.01 is "derived from the attachment, knowledge, and concern for the child * * * developed over time." This very personal interest is inconsistent with the language of Rule 24.01. Rule 24.01 concerns "interests relating to * * * property or transaction[s] * * *." *Id.* This language more appropriately applies to interests involved in traditional civil actions, such as in contracts and torts, rather than the very personal and family interests involved in CHIPS proceedings. Therefore, we hold that the type of interaction between foster parents and child is not an interest that allows intervention under Rule 24.01.

■ The Weilers next argue that the they have a statutory right to participate in the CHIPS proceeding under Minn.Stat. § 260.-155, subd. 1(a) (1992). This statute grants the "child who is the subject of a petition, and the parents, guardian, or lawful custodian of the child" the right to participate. Minn.Stat. § 260.155, subd. 1(a) (1992). A "custodian" is defined as "any person who is under a legal obligation to provide care and support for a minor or who is in fact providing care and support for a minor." Minn. Stat. § 260.015, subd. 14 (1992). The Weilers argue that they have been the lawful custodians of J.A.D. and, therefore, have the

right to participate in the CHIPS proceedings.

The court of appeals considered the meaning of "custodian" in *In the Matter of the Welfare of C.J.*, 481 N.W.2d 861 (Minn.App. 1992), *pet. for review denied* (Minn., Apr. 29, 1992). In *C.J.*, the court of appeals held that current foster parents were custodians under Minn.Stat. § 260.155, subd. 1(a) and, therefore, had a right to intervene in that proceeding to terminate a father's parental rights. *C.J.*, 481 N.W.2d at 863. In this case, the foster parents moved to intervene on September 23, 1992, approximately three weeks after J.A.D. was removed from their home. At the time of the motion, the Weilers were not providing care to J.A.D. and were under no duty to provide care for this boy. Clearly, under the facts of this case, there is no right to intervene under Minn.Stat. § 260.-155, subd. 1(a) (1992).

■ Although the Weilers do not have the right to intervene in this CHIPS proceeding, the trial court does have discretion to allow intervention of foster parents. Foster parents, such as the Weilers, who provide excellent care for a child for an extended period, may have information which can assist a trial court in making its decisions in a CHIPS proceedings. In certain circumstances, it may be appropriate for a trial court to allow foster parents to intervene, either as parties to the action or on a more limited basis. The court must be guided by the principle that "[t]he paramount consideration in all proceedings concerning a child alleged or found to be in need of protection or services is the best interests of the child." Minn.Stat. § 260.011, subd. 2(a) (1992). The purpose of juvenile law is "to preserve and strengthen the child's family ties whenever possible and in the child's best interest * * *." *Id.* We believe the decision to allow persons to intervene other than those allowed by our rule or statute is one that should remain within the sound discretion of the trial court. In this case, there was no abuse of discretion in denying this motion to intervene.

## II.

■ The Weilers further argue that they are entitled to an evidentiary hearing concerning the custody of J.A.D. and that the lower courts applied the wrong statute in determining this issue. The trial court applied Minn.Stat. § 518.18(d) (1992). Under this statute, a petitioning party must show that a change in circumstance has occurred and that modification is in the best interests of the child. Minn.Stat. § 518.18(d) (1992). The court must retain the custody arrangement established by a prior order unless the child's current environment endangers his or her welfare, or the harm associated with a change in custody would be outweighed by the benefit of the change. *Id.*

The Weilers argue that the trial court should have applied the factors listed in Minn.Stat. § 518.17, subd. 1 (1992) to determine whether a change in custody was in the best interests of J.A.D. In the lower courts, the Weilers had argued that § 518.18(d) should be applied in this case. Generally, we do not allow parties to try their "case under a legal theory chosen by [them], and, being unsuccessful therein, subsequently complain upon appeal here that such chosen theory was really not the correct one after all." *State v. Adams,* 251 Minn. 521, 89 N.W.2d 661, 680 (1957). Because of the unique facts in this case, we did consider the position taken by the foster parents before this court.

Section 518.17 normally applies to custody disputes where there is no prior court order granting custody. In this case, the county has had legal custody of J.A.D. at all times since 1988 except for the two brief periods in 1992 when appellants received ex parte orders granting them custody of J.A.D. Furthermore, J.A.D. has been living with the Haggenmillers for over a year. Under these facts, the Weilers needed to present prima facie evidence of a change of circumstances that endangers J.A.D.'s physical or mental health, or his development. *See Nice–Petersen v. Nice–Petersen,* 310 N.W.2d 471, 472 (1981) (citing § 518.18(d) (1980)).

The Weilers presented evidence to the trial court showing that they had a loving and positive relationship with J.A.D. and that because of J.A.D.'s special needs, he could suffer harm if removed from the Weilers' home. However, evidence presented to the trial

872

court by J.A.D.'s social worker and therapist concerning J.A.D.'s current situation showed that he was doing "better at this point in time after the move than anyone dared hoped for" and that he is "doing well in the care of the Haggenmillers." Viewing the evidence as a whole, the trial court did not abuse its discretion in denying an evidentiary hearing under Minn.Stat. § 518.18(d) (1992).

Affirmed.

WAHL, J., took no part in the consideration or decision of this case.