In re the Marriage of Ronald
R. FRAUENSHUH, Jr.,
Respondent,

v.

Sherrie L. GIESE, f/k/a Sherrie
L. Frauenshuh, petitioner,
Appellant.

No. C8–98–444.

Supreme Court of Minnesota.

Sept. 2, 1999.

Elizabeth A. Schading, Barna, Guzy & Steffen, Ltd., Coon Rapids, for appellant.

Daniel A. Gislason, Dustan J. Cross, Gislason, Dosland, Hunter & Malecki, P.L.L.P., New Ulm, for respondent.

---

1. Giese also has a son from a previous marriage who was 16 at the time of Giese's divorce from Frauenshuh.

2. The MTA as adopted by the district court provided:

   [M]ajor decisions [will be] agreed upon by both parties regarding education, major medical treatment, religious upbringing, braces, glasses, etc. The parties shall split expenses (for the boys) which are not cov-

## OPINION

LANCASTER, Justice.

We are confronted with the difficult and important issue of when to permit modification of an award of sole physical custody. This is a case involving a custody dispute that has lasted nearly three years; the parties in this case have been to the district court twice and the court of appeals twice before we granted review. The issue before us is whether parties who agree in their dissolution decree to grant sole physical custody to one parent may stipulate to a standard for modification of physical custody different than the standard provided by statute. We conclude that the requirements of Minn.Stat. § 518.18 (1998) for modification of sole physical custody apply even when the parties have stipulated to a different standard in their dissolution decree. Accordingly, we reverse the court of appeals.

Appellant, Sherrie L. Giese (formerly known as Sherrie L. Frauenshuh) and respondent, Ronald R. Frauenshuh, were married in October 1986. Their son Logan was born in March 1991, and was three years old at the time of the marital dissolution in November 1994.[1] The parties' judgment and decree of dissolution was based upon a stipulated marital termination agreement (MTA). Frauenshuh, who is a lawyer, was represented throughout the divorce, but Giese, who at the time of the dissolution was in training to be a county executive director for the Minnesota Department of Agriculture, was unrepresented at the time the agreement was signed. The MTA granted sole physical custody to Giese and awarded each parent joint legal custody.[2] Frauenshuh was

ered by [Giese's] insurance. [Frauenshuh] shall pay medical bills not covered by insurance, and [Giese] agrees to pay for prescriptions not covered by insurance for the boys. The parties shall both love and care for their children. They shall acknowledge that they are both important to the other and they shall acknowledge the on-going importance of one another to the children in spite of and after the dissolution of marriage. The parties further shall recognize

awarded visitation on Tuesday and Wednesday evenings and every other weekend during the school year along with a four-week extended visitation in the summer. The MTA provided:

> The modification statute, Minn.Stat. § 518.18 shall not be applicable for a modification under the following situations:
>
> 1. If either party shall move a distance greater than fifty (50) miles. Under this circumstance, the best interest of the child will be thoroughly examined pursuant to Minn.Stat. § 518.17.

The agreement provided that if either party moved, the move would "constitute a substantial change in circumstances and the [visitation] schedule will be re-done in [a] fair manner."

Giese learned in August 1996 that she had been appointed to the job of county executive director for the Minnesota Department of Agriculture in Cambridge. Two days after accepting her new job, Giese notified Frauenshuh of her new position, and she moved with Logan to Cambridge from Ortonville. Following Giese's decision to move, Frauenshuh brought a motion for modification of physical custody, claiming that he was entitled to a de novo review of custody because Giese's 150–mile move constituted a substantial change in circumstances pursuant to the parties' MTA.

### A. District court's initial order

The district court issued an order dated November 18, 1996, allowing Giese to move with Logan to Cambridge. The district court relied upon the endangerment standard found in Minn.Stat. § 518.18 and rejected the best interests standard of

Minn.Stat. § 518.17 (1998) stipulated to by the parties in their dissolution decree. Specifically, the district court found that even if Frauenshuh's allegations were substantiated at an evidentiary hearing, there was no showing that Logan's environment endangered his physical or emotional development.

### B. First decision of the court of appeals

Frauenshuh appealed, and the court of appeals, in an unpublished decision, reversed in part and remanded the case to the district court, instructing the district court to apply the best interests standard as found in the parties' dissolution decree. *See Frauenshuh v. Giese*, No. C8–96–2609, 1997 WL 275002 (Minn.App. May 27, 1997) (*Giese I* ). The court of appeals noted that even if Frauenshuh and Giese "should not have been allowed to stipulate to a standard other than the one in the statute, they did so, the trial court approved the stipulation, judgment was entered thereon, and there was no appeal." *Id.* at *1 (citations omitted). Giese did not petition this court for further review of the court of appeals' decision.

### C. District court order on remand

On remand, the district court considered the case on affidavits and written arguments; no new oral testimony was taken. The district court determined that Giese's move with Logan was "unilateral," and ordered that no evidence of events occurring after October 16, 1996, could be submitted. This restriction was coupled with an agreement by the parties in their MTA that because each was in a temporary

---

the importance of communicating directly with regard to the children and they shall not put the children in the middle of their issues concerning the dissolution of marriage.
Both parties shall be responsible for deciding the boys' activities, such as camp, school, swimming lessons, etc. The reason

that both parties shall be responsible for deciding the boys' activities is to allow input on both sides so as to determine visitation and decrease manipulation by either party. Most importantly, these determinations shall be made with the best interests of the children in mind.

work situation,[3] the parties agreed that "no evidence shall be introduced during the period regarding [the temporary work] situations for a change of custody proceeding." The district court determined that Giese's training period lasted from December 1, 1994, until November 30, 1995, and ruled that no evidence from this time period would be considered in determining custody. Essentially, because of the parties' stipulation and the district court's ruling, the time period from which to evaluate custody was reduced to December 1995 to September 1996, just 10 months of Logan's life. Logan was almost seven years old when the district court issued its order on February 9, 1998, ruling: "[1] It is in Logan's best interest to reside with [Giese] in Ortonville, MN; [2] In the event #1 above is not a possibility, it is in Logan's best interests to reside in Ortonville, MN, with [Frauenshuh]." The district court ordered that physical custody of Logan be awarded to Frauenshuh, but stayed its order pending appeal.[4]

## D. Second decision of the court of appeals

Giese appealed and the court of appeals, in an unpublished decision, affirmed the district court. *Frauenshuh v. Giese*, No. C8–98–444, 1998 WL 481890 (Minn.App. Aug.18, 1998) (*Giese II*). We granted Giese's petition for review, which included a claim that the court of appeals in *Giese I* erred by remanding the case to the district court for a determination using the best interests standard contained in the parties' MTA. *See* Minn. R. Civ.App. P. 103.04 ("On appeal from or review of an order the appellate courts may review any order affecting the order from which the appeal is taken and on appeal from a judgment may

review any order involving the merits or affecting the judgment. They may review any other matter as the interest of justice may require.").

■ Our role in reviewing custody modification cases is limited. *See Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). An appellate court will not reverse a custody determination unless the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *See id.* On appeal, a district court's findings of fact, whether based on documentary or oral evidence, are not set aside unless clearly erroneous, and the record is reviewed in a light most favorable to the findings. *See* Minn. R. Civ. P. 52.01; *Ayers v. Ayers*, 508 N.W.2d 515, 518 (Minn.1993).

We begin our analysis by looking to the definitions of physical and legal custody provided by the legislature. The legislature has defined physical custody and residence as "the routine daily care and control and the residence of the child." Minn. Stat. § 518.003, subd. 3(c) (1998). The legislature has defined legal custody as "the right to determine the child's upbringing, including education, health care, and religious training." *Id.* at subd. 3(a). Joint legal custody is defined as "both parents [having] equal rights and responsibilities, including the right to participate in major decisions determining the child's upbringing, including education, health care, and religious training." *Id.* at subd. 3(b).

■ Here, the parties' stipulated dissolution decree awarded sole physical custody to Giese and awarded each parent joint legal custody. Frauenshuh argued at the district court that de facto joint physical

---

3. At the time the MTA was executed, Giese was in training to meet her goal of becoming a county executive director for the Minnesota Department of Agriculture and Frauenshuh was working extra hours because his law practice was short-staffed after a key employee had left.

4. The district court continued to allow Giese to retain custody pending appeals, partly because "in light of this Court's unusual decision; i.e., custody to [Frauenshuh] unless [Giese] moves back to Ortonville, this Court was concerned that an Appellate Court would reverse the custody decision. This obviously would not be in Logan's best interest. Hence, the stay of transfer of custody."

custody existed based on the amount of time he spent with Logan. This argument was rejected by the district court, which described Frauenshuh's argument as "way off base." We have held that when parties have agreed to a specific denomination of physical and legal custody and that denomination has been accepted by the district court, the parties will be bound by it. *See Ayers,* 508 N.W.2d at 520. Such denominations, we have said, "will require careful drafting by the parties in the first instance [and] will provide more certainty in resolving future disputes." *Id.* Thus, we will consider the parties' claims in light of the award of sole physical custody to Giese as contained in their dissolution decree.

■■ As we stated nearly three decades ago in *Tammen v. Tammen:* "Courts * * * will be controlled by the welfare of the child as the paramount consideration." 289 Minn. 28, 30, 182 N.W.2d 840, 842 (1970). At the same time, the role of the courts in dissolution proceedings is "strictly limited to that provided for by statute." *Melamed v. Melamed,* 286 N.W.2d 716, 717 (Minn.1979); *see also Morey v. Peppin,* 375 N.W.2d 19, 22 (Minn.1985) (stating that "statutes have superseded the common law in most aspects of family law"); *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755, 757–58 (Minn.1981) (stating that "dissolution is a statutory action and the authority of the trial court is limited to that provided for by statute") (citation omitted).

The legislature has established procedures and standards for modification of physical custody. Modification of sole physical custody orders is governed by Minn.Stat. § 518.18(d). Section 518.18(d) provides that the court *shall* retain the custody arrangement previously ordered unless:

(i) both parties agree to the modification;

(ii) the child has been integrated into the family of the petitioner with the consent of the other party; or

(iii) the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

*Id.* Here, the parties have not agreed to the modification and the district court found, on a record that amply supported the finding, that the child had not been integrated into the family of Frauenshuh with the consent of the other party.[5] The remaining provision, subdivision (iii), which is referred to sometimes as the "endangerment" standard, is the fulcrum of this custody dispute.

■ A party seeking a modification of physical custody under subdivision (iii) must establish four elements to make a prima facie case for modification: (1) circumstances have changed involving the child or custodial parent; (2) the modification would be in the best interests of the child; (3) the child's physical or emotional health or emotional development is endangered by his or her present environment; and (4) that harm associated with the proposed change in custody would be outweighed by the benefits of the change. *See* Minn.Stat. § 518.18(d); *see also Valentine v. Lutz,* 512 N.W.2d 868, 871 (Minn. 1994).

■ The legislature has provided different standards for cases involving awards of joint physical custody than cases involving sole physical custody. When joint custody

---

**5.** Frauenshuh argued at the district court and the court of appeals in *Giese I* that Logan was integrated into his family as grounds for modification and that Logan was endangered in Giese's custody. The district court rejected these arguments. The court of appeals did not address these issues because it remanded the case for application of the best interests standard. *See Frauenshuh v. Giese,* No. C8–96–2609, 1997 WL 275002, at *2 (Minn.App. May 27, 1997). There is ample evidence in the record to support the district court's ruling that Frauenshuh demonstrated neither integration nor endangerment.

is awarded, the statute allows parents to bind the court to a stipulated standard for modification of custody. *See* Minn.Stat. § 518.18(e) (1998). Section 518.18(e) provides:

> In deciding whether to modify a prior *joint* custody order, the court shall apply the standards set forth in paragraph (d) unless: (1) the parties agree in writing to the application of a different standard, or (2) the party seeking the modification is asking the court for permission to move the residence of the child to another state.

*Id.* (emphasis added). In marked contrast, the legislature has not enacted a comparable provision for parties to agree to a different modification standard when one parent is awarded sole physical custody. If the legislature wanted parties to be afforded the opportunity to stipulate to a different modification standard in cases involving sole physical custody, it would have said so with unambiguous language, as it did for joint custody situations. *See* Minn. Stat. § 645.16 (1998) (providing purpose of statutory interpretation is to ascertain and effectuate the intentions of the legislature and the courts will not disregard the plain language of statutes). We conclude that section 518.18 unambiguously provides that the endangerment standard applies to parties seeking a modification of an award of sole physical custody.

■ The determination by the legislature to provide different standards for modification of sole physical and joint physical custody awards "is indicative of a legislative intent to impart a measure of stability to custody determinations in most circumstances." *State ex rel. Gunderson v. Preuss,* 336 N.W.2d 546, 548 (Minn. 1983). Our case law is in accordance with the approach taken by the legislature and reflects a settled policy view that stability of custody is usually in the child's best interest. *See Pikula,* 374 N.W.2d at 711–12.[6]

In this case, the court of appeals in *Giese I* determined that the parties should be permitted (or at least had in fact been permitted by the district court order approving the marital termination agreement) to establish their own standard for modification of custody, despite the legislature's clear intent to limit the application of the best interests standard of section 518.17 to situations involving joint physical custody. Accordingly, we conclude that the court of appeals erred as a matter of law in remanding the case to the district court for application of the best interests standard agreed to by the parties.[7]

■ We acknowledge the importance of stipulations as a means for resolving martial dissolutions and in no way seek to discourage creative and amicable resolution of these cases within the confines of the law. We have said that considerable weight will be given to stipulations entered with the benefit of counsel, but the para-

---

6. Without referring to any rule of statutory construction that would permit it, the dissenting opinion ignores the plain language of section 518.18. The language of that statute clearly reflects the legislature's intention to provide a measure of permanent stability to the life of a child who has been the object of a custody dispute and who has finally been awarded to the sole physical custody of one parent. In place of the statutory protection the dissenting opinion would substitute a stipulation, which effectively leaves for another day any decision that would bring some measure of stability and permanency to the physical custody of this child.

7. The court of appeals' decision in *Giese I* is also inconsistent with earlier decisions of the court of appeals. In *Hill v. Hill,* the court of appeals concluded in an unpublished decision that parties could not stipulate "out of the strict requirements" of section 518.18 for modification of custody. No. C9–95–1670, 1996 WL 91676, at *3 (Minn.App. Mar.5, 1996); *see also Tiggelaar v. Tiggelaar,* 433 N.W.2d 145, 148 (Minn.App.1988), *rev. denied* (Minn. Feb. 10, 1989) (applying endangerment standard to modification of sole physical custody). No decision of this court or the court of appeals had, at the time the parties divorced, permitted stipulated circumvention of the requirements of the modification statute.

mount consideration is the welfare and best interests of the children. *See Petersen v. Petersen*, 296 Minn. 147, 148, 206 N.W.2d 658, 659 (1973) (stating that courts are not bound by stipulations). We have held that parties may stipulate to waive statutory rights in dissolution cases. *See Karon v. Karon*, 435 N.W.2d 501, 503 (Minn.1989) (allowing for an express waiver of spousal maintenance). However, we cannot allow parties to contravene the plain and unambiguous intent of the legislature to provide permanence and closure in child custody matters. We cannot equate decisions regarding child custody to decisions regarding property. It is one thing to hold for another day issues related to money or property of a party; it is quite another to permit a stipulation which effectively holds for another day the decision of who has custody of a child.

Based upon the plain language provided by the legislature, we hold that the requirements of Minn.Stat. § 518.18 for modification of sole physical custody apply even when the parties have stipulated to a different standard in their dissolution decree. Therefore, we reverse the court of appeals and conclude that the district court correctly applied the endangerment standard of section 518.18(e) in its original ruling.[8] Accordingly, we remand this case to the district court for proceedings consistent with this opinion.

Reversed and remanded.

GILBERT, Justice (dissenting).

I respectfully dissent from the majority opinion, which sets aside a 5–year–old court approved custody stipulation. I cannot concur with this decision because of the inequities that result with respect to both the parents and their child.

Although courts are not strictly bound by stipulations between litigating parties, stipulations are heavily favored in dissolution and custody proceedings. "Courts favor stipulations in dissolution cases as a means of simplifying and expediting litigation, and to bring resolution to what frequently has become an acrimonious relationship between the parties." *Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn.1997). "Custody provisions contained in a stipulated decree must be accorded a good deal of deference, in that they represent the terms specifically agreed to by the parties and adopted by the court." *Ayers v. Ayers*, 508 N.W.2d 515, 520 (Minn.1993). Similarly, the General Rules of Practice for the District Courts encourage, and in certain instances mandate, alternative dispute resolution in family cases. *See* Minn. R. Gen. Prac. 310.01. While the majority opinion pays lip service to this precedent, it nevertheless entirely disregards the stipulation entered into between the parents in the present case.

As part of their Marital Termination Agreement (MTA), Frauenshuh and Giese agreed on the importance of providing their child with a stable community environment. To that end, they entered into a stipulation to ensure that their child would not be taken out of his community environment unless such a move was consistent

8. The court of appeals in *Giese II* affirmed the district court on remand that, under the best interests standard of Minn.Stat. § 518.17 (1998), it was in Logan's best interests to live in Ortonville with his mother, but if that was not possible then it was in Logan's best interests to live with Frauenshuh in Ortonville. *See Frauenshuh v. Giese*, C8–98–444, 1998 WL 481890 (Minn.App. Aug.18, 1998). Giese argued that the court of appeals should extend to an in-state move the rule first announced in *Auge v. Auge*, 334 N.W.2d 393, 399 (Minn.1983). In *Auge*, we announced a presumption that removal with the custodial parent is in a child's best interests unless the noncustodial parent makes a prima facie showing against removal. The court of appeals in *Giese II* declined to extend the *Auge* presumption to an in-state move when the parties stipulated to a nonstatutory standard for reviewing custody in the event of a move of more than 50 miles. Because we conclude that the district court properly applied the endangerment standard of section 518.18, we do not address the issue of whether *Auge* should apply to moves within the state of Minnesota.

with the best interests of the child. The majority now holds this stipulation invalid, reasoning that Minn.Stat. § 518.18(d)(iii) precludes parties without joint physical custody from seeking modification of a custody order unless the child is endangered. The majority relies on several canons of statutory interpretation to support its assertion that the legislature intended the endangerment standard set forth in section 518(d)(iii) to apply in all cases where one parent has been granted sole physical custody. In so doing, however, the majority ignores the equities of this case and the findings of the trial court.

The majority's opinion undermines Frauenshuh's and Giese's well-settled rights and expectations. Frauenshuh and Giese stipulated to certain dissolution and custody conditions. If any of those stipulations were not in the best interest of the child, the trial court should have rejected them when the couple's MTA was originally presented to the court. The trial court did not do this. Rather, the court read and approved the dissolution stipulation and incorporated the terms thereof into its judgment and dissolution decree. Neither party appealed from that judgment and decree. Now, approximately 5 years after the finalization of the trial court's judgment, the majority is changing the rules for this family. What the parties believed and the trial court declared to be a legally binding condition on Giese's physical custody, the majority now declares to be invalid. In so doing, the majority is effectively, and somewhat paradoxically, permitting Giese to unilaterally modify and eliminate an express condition of the original custody order.

Most troubling about this unilateral amendment of the original custody order is that it fails to incorporate, and may in fact violate, the best interests of the parties' minor child. The majority correctly recognizes that in child custody matters, "the paramount consideration is the welfare and best interests of the children." *See also Petersen v. Petersen*, 296 Minn. 147, 148, 206 N.W.2d 658, 659 (1973). As the facts of the present case demonstrate, however, the majority's narrow interpretation and strict application of section 518.18 undermine this standard.

The stipulation entered into by Frauenshuh and Giese provided that, in the event either parent moved more than 50 miles, custody would be determined by looking to the best interests of the child. Thus, the parties sought to apply the very standard the majority purports to protect. Upon review of the facts of this case, the trial court ruled that it was in the best interests of the child to remain in Ortonville and, to that end, ordered that Frauenshuh be granted physical custody of the child. The majority, however, now elevates a boilerplate standard designed to promote permanency and closure in child custody matters ahead of what has been determined to be in the best interests of the child in this particular case. Thus, the majority opinion renders the best interests of the child irrelevant.

Importantly, Frauenshuh and Giese did not try and circumvent statutory provisions designed to protect children. Rather, they agreed that, in the event one of the parties made a move disruptive to their child's community environment, their child's interest should be given even greater protection than the law requires. Nevertheless, the majority now refuses to apply the best interests standard, and instead applies the endangerment standard set forth in Minn.Stat. § 518.18(d)(iii). In so doing, the majority denies the parents the right to determine what factors are most important to the well being of their child and thus most deserving of the highest level of protection the law can provide. At a time when parents should be applauded for placing their child's interests above their own in dissolution and post-dissolution proceedings, the majority's opinion serves only to thrust the courts

even more into micromanaging family relationships. Accordingly, I would affirm the court of appeals.

PAGE, Justice (dissenting).
I join in the dissent of Justice Gilbert.

STRINGER, Justice (dissenting).
I join in the dissent of Justice Gilbert.