Joyce A. JOHNSON–SMOLAK, n/k/a Joyce A. Johnson, petitioner, Respondent,

v.

**Jared Pahl FINK, Appellant.**

No. A05–52.

Court of Appeals of Minnesota.

Sept. 20, 2005.

Susan A. Daudelin, Katz, Manka, Teplinsky, Due & Sobol, Ltd., Minneapolis, MN, for respondent.

Tracy I. Nightingale, Nightingale Law Office, St. Louis Park, MN. for appellant.

Considered and decided by
KLAPHAKE, Presiding Judge,
TOUSSAINT, Chief Judge, and WILLIS, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant Jared Pahl Fink, the father of M.R.F., and respondent Joyce A. Johnson, M.R.F.'s maternal grandmother, stipulated to joint legal and physical custody of M.R.F. after his mother died in 1996. In 2003, both parties moved to modify custody: appellant sought sole legal and physical custody of M.R.F., while respondent sought sole physical custody or, in the alternative, sole legal and physical custody of M.R.F. Following an evidentiary hearing, the district court denied both parties' motions. On appeal, appellant argues that the district court abused its discretion by applying an incorrect standard for modification and by failing to acknowledge his presumptive right as natural parent to custody of M.R.F.

Because the district court applied the proper standard for custody modification and because appellant's presumptive right to custody as parent of M.R.F. has been overcome by the stipulation between the parties and the lapse of time, we affirm.

## FACTS

Appellant married Rochelle Johnson when she was still in high school. Shortly thereafter, M.R.F. was born on July 3, 1995. Johnson died in an automobile accident when M.R.F. was 18 months old. At the time, appellant was sporadically employed. Within a year after Johnson's death, appellant and respondent, who is M.R.F.'s maternal grandmother, entered into a stipulation for joint physical and legal custody of M.R.F. This stipulation was confirmed by court order issued December 4, 1997. M.R.F. has lived with respondent since that time.

In 1999, appellant enlisted in the Navy, left Minnesota for basic training, and eventually settled in Virginia, where he currently lives with his second wife. Although relations between appellant and respondent were initially somewhat cordial, tensions developed after appellant's enlistment and were heightened over issues of child support and religious training. Appellant, a Mormon, wanted M.R.F. raised in the Mormon church; respondent, a Roman Catholic, agreed to this, but appellant did not believe that she was wholeheartedly involving the child in the Mormon church. A series of confrontations over support, access, visitation, and religious training resulted in both parties moving for modification of the custody order.

A custody evaluation of appellant was performed in Virginia and affirmed that he would be an appropriate custodial parent. A similar evaluation of respondent was performed in Minnesota; the evaluator concluded that respondent was an appropriate custodial parent. Neither evaluator examined both parties. Both evaluations made clear that M.R.F. is a happy, well-adjusted child, despite the now-open hostility between his joint custodians.

After a hearing in July 2004, the district court found that in order to modify custody, appellant would have to demonstrate that (1) there had been a change in circumstances since the prior order; (2) modification would be in M.R.F.'s best interests; (3) the child's current environment endangered his physical or emotional health; and (4) that the harm caused by modification would be outweighed by the advantages of the change. The district court concluded that appellant failed to prove that modification would be in M.R.F.'s best interests, that M.R.F. was endangered in his current environment, or that the harm caused by modification would be outweighed by its advantages. The district court therefore denied the parties' motions for modification and ordered that the joint legal and physical custody arrangement and the child's current residence be continued.

Appellant moved for amended findings or a new trial based on transcripts of telephone conversations between the parties. Appellant claimed that these transcripts showed the open hostility between the parties and how it affected M.R.F.'s emotional health. The district court denied this motion, and this appeal followed.

## ISSUES

1. Did the district court abuse its discretion by refusing to modify the joint custody arrangement?

2. Did the district court err by failing to acknowledge that the parent is presumed to be a fit custodian?

## ANALYSIS

■ The district court's custody modification decisions are reviewed for an abuse of discretion. *Frauenshuh v. Giese*, 599 N.W.2d 153, 156 (Minn.1999). An abuse of discretion occurs when the district court makes findings unsupported by the evidence or improperly applies the law. *Id.* Findings are reviewed for clear error; the record is reviewed in a light most favorable to the findings. *Id.*

■ A prior custody order will not be modified unless the court finds that a change of circumstances has occurred and that modification is necessary to serve the best interests of the child. Minn.Stat. § 518.18(d) (2004). When a proposed modification includes a change in the child's primary residence, custody may be modified if the district court finds that the child's present environment endangers the child's physical or emotional health and that the harm caused by the change is outweighed by the benefit to the child. Minn.Stat. § 518.18(d)(iv). "Endangerment" implies a significant degree of danger or likely harm to the child's physical or emotional state. *Sharp v. Bilbro*, 614 N.W.2d 260, 263 (Minn.App.2000), *review denied* (Minn. Sept. 26, 2000).

The district court found that the child is not endangered in his present environment, but on the contrary, is a happy, well-adjusted child. The court also found that respondent attempted to provide appropriate religious instruction in accordance with appellant's wishes and the court further found that allegations regarding hygiene, clothing, and respondent's smoking do not rise to the level of endangerment. These findings are supported by the record and are not clearly erroneous.

■ Appellant argues that the district court should have applied the standard of Minn.Stat. § 518.18(e) (2004), as interpreted in *Ayers v. Ayers*, 508 N.W.2d 515, 520 (Minn.1993), which states that when a joint custodian seeks permission to move the child's residence to another state, the court must analyze the request using the best interests factors of Minn.Stat. § 518.17, subd. 1(a) (2004). Had appellant simply

asked for permission to move M.R.F. to Virginia, this would have been the correct standard. Appellant, however, sought to not only move the residence of the child, but also to modify the basic custody arrangement, from joint legal and physical custody with respondent to sole legal and physical custody with appellant. The district court thus properly applied the law: it maintained the current custody arrangement, which specified the child's primary residence, in the absence of evidence that the child's physical or emotional health was endangered.

*Presumption of Custody in the Natural Parent*

 Appellant argues that the district court erred as a matter of law by failing to consider his right as natural parent to custody of M.R.F. The parent is presumed to be a fit and appropriate custodian for his or her child, unless it is shown that the parent is unfit, that the parent has abandoned his or her right to custody, or that there are extraordinary circumstances requiring that the parent be deprived of custody. *In re Custody of N.A.K.*, 649 N.W.2d 166, 174 (Minn.2002) (citing *Wallin v. Wallin*, 290 Minn. 261, 264–65, 187 N.W.2d 627, 629–30 (1971)). But "[t]he principle that the custody of young children is ordinarily best vested in the [parent] ... is distinctly subordinate to the controlling principle that the overriding consideration in custody proceedings is the child's welfare." *Wallin*, 290 Minn. at 265, 187 N.W.2d at 630.

In *Durkin v. Hinich*, 442 N.W.2d 148, 153 (Minn.1989), custody of the child remained in a third party, despite the fact that the mother was not found to be unfit. The court recognized that there were "grave and weighty" reasons to continue the custodial arrangement, when the child had been integrated into the third party's home with the initial consent of the mother, and the experts concluded that returning the child to the mother would be detrimental to the child. *Id.* This principle was reaffirmed in *N.A.K.*, 649 N.W.2d at 175, where the supreme court stated that "the cases make clear that ultimately the welfare of the child is the umbrella under which every aspect of custody decisions— including the parental presumption—falls." The court recognized that the parental presumption can be overcome by "extraordinary circumstances of a grave and weighty nature." *Id.*

Here, the district court considered the parental presumption but found extraordinary circumstances that overcame the presumption: the stipulated agreement between these parties to share joint legal and physical custody of M.R.F. and the fact that M.R.F. has lived exclusively with respondent for eight years. These findings are based on the record and are not clearly erroneous. The district court's decision to maintain the custody arrangement was not an abuse of discretion.

**DECISION**

The district court did not abuse its discretion by refusing to modify the current custody arrangement, when appellant failed to demonstrate that modification would be in the child's best interests or that the child was endangered in his current environment.

**Affirmed.**