*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0776
A14-1160
A14-1336**

In re the Custody of T.F.
Shawn Kostrzewski, petitioner,
Respondent,

vs.

Amy L. Frisinger, n/k/a Amy L. Budeau,
Appellant.

**Filed February 2, 2015
Affirmed in part and reversed in part
Ross, Judge**

Clay County District Court
File No. 14-FX-01-000471

Marshall County District Court
File No.  45-FA-14-349

Michael M. Mattocks, Charlson & Jorgenson, P.A., Thief River Falls, Minnesota (for respondent)

Amy L. Budeau, Grand Junction, Colorado (pro se appellant)

Considered and decided by Ross, Presiding Judge; Smith, Judge; and Harten, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**ROSS**, Judge

The district court in this child-custody dispute between parents Amy Budeau and Shawn Kostrzewski denied Budeau's motion seeking sole custody of the parties' daughter, ordered Budeau to pay Kostrzewski's attorney fees for Budeau's cost-enhancing litigation tactics, and restricted future filing by Budeau after finding that she is a frivolous litigant. Budeau appeals each decision. We affirm the district court's decision denying Budeau's motion to modify custody because the challenge rests on credibility determinations and fact findings, and we defer to the district court's assessment on these things. We affirm the district court's decision to award conduct-based attorney fees because the record supports the district court's exercise of discretion. But we reverse the district court's frivolous-litigant sanction because the underlying finding is substantially contradicted by the undisputed fact that Budeau brought her motion in part responding to the child's serious custody-related threat to harm herself.

## FACTS

Amy Budeau and Shawn Kostrzewski are parents of daughter T.F., born in 1999. Kostrzewski and Budeau were never married. They entered a custody agreement in 2001 giving them joint legal custody and giving physical custody to Budeau subject to Kostrzewski's parenting time. That arrangement continued until 2008, when the district court granted Kostrzewski's modification motion and awarded him sole physical custody subject to Budeau's parenting time. Budeau moved to modify custody and parenting time in April 2011, seeking sole physical custody in her home in Colorado. The district court

denied Budeau's motion in August 2011. Two months later, Budeau moved the district court to hold Kostrzewski in contempt and to grant her an evidentiary hearing on her request to modify custody. The district court denied Budeau's motion in February 2012, but it did modify the parenting-time schedule.

Three months later, Budeau filed her third motion to modify custody, and that motion is the subject of this appeal. Budeau supported the motion with numerous allegations. She alleged that T.F. had considered harming herself and did not want to live with her father. She also alleged that Kostrzewski drank excessively, drove drunk with T.F. in the car, smoked cigarettes in the home, and constantly rescheduled Budeau's phone calls with T.F. Kostrzewski opposed the motion and sought attorney fees.

The district court held an evidentiary hearing. Budeau testified that Kostrzewski had rescheduled her phone calls with T.F. 60 times since January 2013. She opined that Kostrzewski is an alcoholic who has driven drunk with T.F. in the car. She expressed concerns about T.F.'s grades. Budeau's husband, Robert Budeau, also testified, complaining that Kostrzewski has not allowed him to talk to T.F. on the telephone unless Amy Budeau is present.

Kostrzewski testified that many calls were indeed rescheduled, but he explained that the rescheduling was necessary to accommodate T.F.'s participation in volleyball, basketball, and track and that he has left the rescheduling to T.F. to manage. Kostrzewski opined that T.F. should be allowed to talk with Budeau and Budeau's family at any time, and he said he encouraged T.F. to call Budeau every other day. He testified that although he had been convicted of drunk driving in 1999, he has never been diagnosed as an

3

alcoholic and would willingly undergo a chemical dependency evaluation. Kostrzewski said he drinks two or three times a week, which is less than he drank before the February 2012 custody order.

Budeau's attorney presented a letter addressed to the district court judge ostensibly penned by T.F. in August 2012. The letter indicated that T.F. had been hurt when she had to leave her mother and that she had considered cutting herself. It said that she wanted to live with her mother and that she believed her father has a drinking problem. She describes that although he tries to quit, he "won't drink for a couple of days but then he would." The letter also expressed that she loves her father and stepmother. It ends with an assurance that her mother did not force her to write the letter and declares, "I really want to be able to live with my mom." Kostrzewski testified that he knew about the letter but that T.F. told him that Budeau made her write it. He also opined that some of the letter did not appear to be written in T.F.'s handwriting.

T.F. testified in chambers with neither parent present. She told the judge that she preferred to live with her mother. She expressed concern about her father's drinking, described it as occurring "mostly every day," and said that he had driven drunk once with her in the car but that she could not recall when it was. She explained that she has thought about cutting herself when her parents fight, but she has never acted on the thought. She told the judge that she wrote the letter herself without anyone's help.

The district court left the record open after the hearing. It ordered Kostrzewski to complete a chemical dependency assessment within 30 days. Kostrzewski complied, participating in an alcohol and drug evaluation in July 2013 with addiction counselor

4

Pamela Quinn. Quinn filed an evaluation report with the district court in September 2013. The report concluded that Kostrzewski was not chemically dependent. Budeau objected to the report and sought to cross-examine Quinn. The district court reopened the record for additional evidence solely on the question of Kostrzewski's alleged alcohol abuse.

The follow-up evidentiary hearing occurred in February 2014. Quinn testified that she has conducted chemical dependency evaluations since 1984. She met and evaluated Kostrzewski in person, administering the American Society of Addiction Medicine's questionnaire designed to evaluate chemical dependency. She also interviewed Kostrzewski's wife and spoke with Marshall County Social Services to determine whether any relevant report had been filed regarding Kostrzewski. Budeau's lengthy cross-examination emphasized that the evaluation depended on Kostrzewski's self-reporting and that anyone subjected to the questionnaire could respond falsely.

Budeau also cross-examined Kostrzewski's wife, Tara. She testified that she had never fought with her husband about his drinking and had never seen him drink in the car. She also said that she had seen him drink at most two to three times a week.

T.F. testified in front of her parents. She said that she had seen her father drink about four times weekly. She does not like him to drink because "he's harming his body," but she is not frightened of him when he drinks. She testified that she feels Kostrzewski has reduced his drinking and that her mother had told her that Kostrzewski "drinks to wet," meaning that "when he drinks too much, he pees." T.F.'s attorney introduced numerous photographs taken by T.F. of beer cans around Kostrzewski's home. T.F. told

the court that Budeau had asked T.F. to send her anything that T.F. thought was evidence of Kostrzewski's drinking.

The district court denied Budeau's motion to modify custody. It did so finding no significant change in circumstances since the last order. It observed, "[Budeau] has repeatedly brought up the same [alcohol usage] concerns in every motion since the 2008 Order that changed custody to Mr. Kostrzewski. Each time, the Court has considered her allegations and found that it was not significant enough to warrant modification." The district court also found that rescheduling the phone conversations did not amount to a persistent and willful denial of parenting time. It weighed the 13 best-interest factors, *see* Minn. Stat. § 518.17, subd. 1(a) (2012), and found that it was not in T.F.'s best interest to modify the custody order. The district court also found that Budeau failed to identify any danger to T.F.'s physical or emotional development, and it specifically found that "changing custody at this point would likely lead to emotional harm to the child."

The district court addressed attorney fees. Kostrzewski's attorney submitted an affidavit indicating that Kostrzewski incurred $14,159 in costs and fees to respond to Budeau's motion. Kostrzewski asked the court to find Budeau to be a frivolous litigant under Minnesota Rule of General Practice 9 and to restrict her in filing any future motions. The district court granted the motion and prohibited Budeau from filing any motions for one year without its approval. It ordered Budeau to pay $6,000 in attorney fees. Budeau appeals.

**D E C I S I O N**

Budeau appeals the district court's refusal to modify custody, its award of attorney fees, and its restrictions on her ability to file motions. We address each in turn.

**I**

Budeau asks us to reverse the custody order. We will not overturn a district court's custody-modification decision unless it reflects an abuse of discretion either based on findings unsupported by the evidence or on the improper application of law. *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008). Because of our deference to the district court's fact-finding role, we review the record in a light favorable to the findings, *Sharp v. Bilbro*, 614 N.W.2d 260, 263 (Minn. App. 2000), *review denied* (Minn. Sept. 26, 2000), and we will not set the findings aside unless they are clearly erroneous. *Goldman*, 748 N.W.2d at 284.

Budeau contends that the district court erred by treating Quinn as an expert under Minnesota Statutes section 148F.18 (2014). This statute pertains to the licensing of drug and alcohol counselors. Even if the legislature could qualify classes of witnesses in judicial proceedings without violating the constitutional separation of powers between the branches of government, nothing in section 148F.18 attempts to do so. The statute does not suggest that the district court should reject opinion testimony from a witness who is not licensed as a drug and alcohol counselor. And Quinn did not provide an opinion about chemical dependency counseling but rather about a chemical dependency evaluation. Budeau fails to make the case that Quinn was so unqualified to evaluate Kostrzewski's chemical dependency that the district court acted outside its discretion by allowing her to

7

testify about the results of her evaluation and by affording the testimony whatever weight it chose to give it.

Having addressed the witness dispute, we turn to the district court's decision not to modify custody. Generally, a party may not move to modify custody within two years after a previous motion was resolved on the merits. Minn. Stat. § 518.18(b) (2014). This general rule has two exceptions: when "there is persistent and willful denial or interference with parenting time" and when "the child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." Minn. Stat. § 518.18(c) (2014). Budeau attempts to make the case for both endangerment and interference with her parenting time. Neither argument is convincing.

We reject Budeau's argument that a change in circumstance endangered T.F. To successfully move to modify custody based on endangerment, the party seeking modification

> must establish four elements to make a prima facie case for modification: (1) circumstances have changed involving the child or custodial parent; (2) the modification would be in the best interests of the child; (3) the child's physical or emotional health or emotional development is endangered by his or her present environment; and (4) that harm associated with the proposed change in custody would be outweighed by the benefits of the change.

*Frauenshuh v. Giese*, 599 N.W.2d 153, 157 (Minn. 1999), *superseded in part on other grounds*, 2000 Minn. Laws ch. 444, art. 1, § 5, *as recognized in Goldman*, 748 N.W.2d at 289; *see also* Minn. Stat. § 518.18(d) (2014).

8

Budeau made her claim of an endangering change in circumstances based on Kostrzewski's alcohol use. But the district court found that "there has not been a significant change in circumstances" since the time of the most recent amended custody order "or a danger related to Mr. Kostrzewski's alcohol usage." These findings rest on the evidence and on the competing claims of Budeau (that Kostrzewski is an alcoholic) and Kostrzewski (that he is not an alcoholic). The district court took evidence from both parties. The conflicting evidence included photographs of beer cans in Kostrzewski's home and T.F.'s impression of Kostrzewski's consumption frequency, as well as testimony from Kostrzewski, his chemical dependency evaluator, and his wife. The district court is in the best position to weigh conflicting evidence. *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009). The district court was not persuaded by the evidence that Kostrzewski is an alcoholic, that he drinks daily, or that he drives drunk with T.F. in the car. Budeau directs us to nothing to support our second-guessing of these findings.

The district court was in the best position to weigh the evidence presented, and the conclusion it reached is supported by facts in the record. Quinn concluded that Kostrzewski is not an alcoholic or addict. T.F. testified that her father drinks three to four times a week, that he has reduced his drinking over time, and that the only reason she wishes he would stop is for his health. The district court did not clearly err by refusing to consider Kostrzewski's drinking to be an endangering change in circumstances. Indeed, the district court reflected on the record of Budeau's previous motions and concluded that Kostrzewski's drinking was not a new or changed

9

circumstance at all. The district court appropriately recognized that Budeau has not proved an endangering substantial change in circumstances.

The evidence also supports the district court's finding that Kostrzewski's rescheduling of phone calls between T.F. and Budeau did not "rise to the level of persistent and willful denial of parenting time." Kostrzewski explained that because T.F. participates in three after-school sports, she often needs to reschedule planned telephone time with her mother. He also testified that he has directed T.F. to manage the schedule herself and that he encourages her to call her mother frequently. This testimony, presented without disputing evidence, supports the district court's finding that Kostrzewski has not persistently and willfully interfered with Budeau's parenting time.

## II

We next consider Budeau's charge that the district court erred by ordering her to pay Kostrzewski $6,000 toward his attorney fees. A district court has the discretion to award attorney fees against a party "who unreasonably contributes to the length or expense of the proceeding." Minn. Stat. § 518.14 (2014). We will uphold a district court's award of attorney fees absent an abuse of that discretion. *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn. 1987). The party moving for conduct-based attorney fees must establish that the adverse party's conduct during the litigation process justifies an award. *Geske v. Marcolina*, 624 N.W.2d 813, 818 (Minn. App. 2001).

Budeau filed three motions between August 2011 and May 2013 seeking to modify custody. That averages one custody motion every year. The motion now at issue

10

took ten months to resolve and included multiple intermediate briefing and hearings. The district court found that Budeau contributed to the length of this proceeding in part because of the manner in which she contested the chemical dependency evaluation. After insisting on cross-examining the evaluator, her cross-examination of Quinn was highly repetitive and ineffectual; it went on so long that the district court had to continue the hearing to allow the remaining witnesses to testify on another date. At the continued hearing, Budeau's attorney attempted to offer more than a dozen photographs of beer cans taken throughout Kostrzewski's home (photos that Budeau had directed her daughter to take despite knowing that T.F. was deeply saddened and burdened by the parental dispute). The district court sustained a cumulative objection to most of the photographs. But it eventually received all of them at once because, despite their limited probativeness, Budeau's attorney kept attempting to enter them on various grounds. These circumstances support the district court's determination that Budeau's actions "had the effect of lengthening the litigation and increasing the cost to both parties." The district court did not abuse its discretion by awarding Kostrzewski $6,000 in attorney fees out of the $14,159 he requested.

Budeau also contends that the district court erred by denying her request to release a $10,000 parenting-time bond that she posted to comply with the district court's 2008 modification order granting Kostrzewski sole physical custody. She cites no authority for her position other than the statute authorizing the district court to order a cost bond. *See* Minn. Stat. § 518.175, subd. 6(d) (2014). We therefore hold that the district court did not abuse its discretion by denying Budeau's request to release the bond.

# III

Budeau challenges the district court's *sua sponte* determination that she is a frivolous litigant under rule 9 of the Minnesota Rules of General Practice and its consequent order prohibiting her from filing any motions for one year without prior court approval. A district court may impose preconditions on a frivolous litigant's future filing even on its own initiative. Minn. R. Gen. Pract. 9.01. The district court must follow the procedures in rule 9, which require the court to consider a set of factors outlined in rule 9.02(b) and make findings supporting its determination under rule 9.02(c). We review a district court's determination that a party is a frivolous litigant applying an abuse-of-discretion standard. *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 290, 295 (Minn. App. 2007).

Under the unique circumstances of this case, we cannot hold that the district court acted within its discretion by imposing the filing limitation. This is a very close call. We are mindful of the inappropriate frequency of Budeau's modification motions and the lack of significant support for them. And we appreciate the district court's reasoned effort to avoid or minimize Budeau's repetitive litigation. But we are convinced that T.F.'s undisputed references to harming herself physically in context of her stated desire to move back with her mother puts Budeau's present effort outside the "frivolous" category. We recognize that T.F. told the district court that it was the weight of her parents' dispute, not her desire to move back with her mother (as her mother had implied), that drove T.F. to declare her self-harming ideations. But despite the lack of evidence of the endangerment necessary to support the motion, we are satisfied that, in this situation,

12

sanctioning Budeau because she brought the motion is not consistent with the rule's objective to prevent clearly frivolous litigation.  T.F. made the alarming statement to her mother, and although renewing the litigation to modify custody was not an effective response to it, it was not frivolous as we understand the rule. We therefore reverse only the district court's finding that Budeau is a frivolous litigant under the rule and its consequent decision to impose the filing limitation.

**Affirmed in part and reversed in part.**