In re the Marriage of: John D. MEYER, Petitioner, Appellant,

v.

Margery E. MEYER, Respondent.

No. C3-85-514.

Court of Appeals of Minnesota.

Oct. 15, 1985.

Review Denied Dec. 30, 1985.

Michael E. Orman, Duluth, for appellant.

John Fillenworth, Duluth, for respondent.

Considered and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Following a three-day trial of this action for dissolution of the parties' marriage, the trial court granted custody of the minor child to the mother, awarded her maintenance and child support, and divided the parties' property. This appeal followed. We affirm in part, and reverse and remand in part.

## FACTS

John and Margery Meyer were married in 1961, when John was 18 and Margery was 17. Margery was employed as a clerk in 1961 and 1962, and John worked part-time and completed college in 1964. In 1964, the parties moved to Chicago, where John worked for Price Waterhouse and earned his CPA. Margery became a full time homemaker and did not work outside the home again until 1971, when she worked for 1½ years as a clerk, and for a short time as a secretary in 1984, and presently is employed part-time.

In 1967, the family returned to Minnesota. John was employed by an accounting firm in Duluth as a CPA until 1976, when he opened his own firm. He is presently a partner in another accounting firm.

Three children were born of the parties' marriage, including one son, Ross, who is eight years old.

In 1983, John filed a petition for dissolution of the parties' marriage. Testimony at trial indicated that throughout the 1970's John was a practicing alcoholic. In 1980 he received treatment, and since that time he has been a recovering alcoholic. During the period of time that John was a practicing alcoholic, Margery was the primary parent, and demonstrated the strength and ability to keep things together. However, in 1980, Margery began to demonstrate symptoms of a mental disorder. The evidence at trial demonstrated that since October 1980 Margery has continued to manifest these symptoms, and was hospitalized upon the following occasions:

| Date of Hospitalization | Diagnosis upon Discharge |
| --- | --- |
| 10/1/80 – 10/2/80 | Brief reactive psychosis |
| 11/13/80 – 11/21/80 | Personality disorder of the schizotypal type |
| 4/30/82 – 5/18/82 | Major affective disorder with psychotic features |
| 3/83 – 8 days | Major depression |
| 5/2/83 – 5/27/83 | Personality disorder schizoid type with significant elements of situational stress and associated depression |
| 7/6/84 – 7/18/84 | Schizophrenia-paranoid type. |

At trial she exhibited symptoms of her illness. After the May 1983 hospital-

ization, she decided to leave the family home and establish her own apartment. John testified that she threatened suicide if Ross were not allowed to live with her. He further testified that Ross' behavior is being negatively affected, that the homestead is Ross' home, that he is comfortable and happy there with his own room, that John has no objection to very liberal visitation by Margery, and that, in his opinion, her condition is worsening.

The trial court found that, although Margery continues to suffer from a psychiatric disorder diagnosed as schizophreniaparanoid type, she recognizes her need for continued treatment and medication. Her present treatment program includes: (1) continuing treatment and medication monitoring by her physician; (2) group therapy; (3) education or training; (4) attendance in a support group; and (5) counseling with a psychotherapist. The court further found that "if Margery continues this treatment and medication she can function normally, handle the responsibilities of a parent, obtain an education, and become employable."

The court granted custody of Ross to Margery, with liberal and structured visitation allowed by John. The court ordered child support of $327 per month, computing that amount pursuant to the Child Support Guidelines. John's monthly net income was $1,310 and his expenses were $1,100. The books and records of John's practice, by agreement of the parties, were examined by a CPA from John's office. The results of his review and analytical procedures applied to the individual income tax returns, the corporate returns, partnership returns, and financial records indicated that John's income was properly stated.

The trial court accepted John's monthly income at $1,310 in setting the amount of child support.

No evidence was offered contrary to the testimony offered by John regarding the financial matters of the parties with the exception that Margery had the feeling John had manipulated his income, that in the past there was always plenty of money, but admitted she was never involved in the financial affairs of the family.

The court awarded Margery maintenance of $800 per month for five years, retaining jurisdiction to revise, if necessary, the amount and duration of the award. The court divided the parties' property as follows:

ASSETS

| John | | Margery | |
|---|---|---|---|
| Homestead | $ 95,000 | IRA | $18,766 |
| 1981 Audi | $ 4,000 | 1980 Audi | $ 6,000 |
| CPA Practice | | Contract for | |
| Stock | $ 30,000 | Deed | $ 5,180 |
| | | PMD Stock | $ 1,200 |
| | | Second Mortgage | |
| | | on Homestead | $ 8,000 |
| TOTAL: | $129,000 | | $39,146 |

LIABILITIES

| | | | |
|---|---|---|---|
| Homestead Mortgage | $ 63,233 | | |
| Meyer – Norman Partnership Negative Equity Value | $ 47,452 | | |
| Debt to Partnership Capital Account | $ 34,000 | | |
| Unpaid Bills of the Parties | $ 1,118 | | |
| Appraisal and Audit Fees | $ 5,216 | | |
| 1981 Audi | $ 4,500 | | |
| 1980 Audi | $ 2,000 | | |
| Balance – Boat Loan | $ 1,000 | | |
| TOTAL | $158,519 | | –0– |
| NET | ($ 29,519) | | $39,146 |

In addition, the court ordered John to pay Margery's attorney's fees in the amount of $2,500, payable forthwith, costs of appraisal and audit fees, court costs, and disbursements. Margery was not apportioned any debt.

## ISSUES

1. Did the trial court abuse its discretion by awarding custody to a mother with a psychiatric disorder based upon continuing treatment and medication that she can function normally and handle the responsibilities of a parent?

2. Did the trial court adequately safeguard the minor child's interests when it established conditions of custody?

3. Did the trial court abuse its discretion when it failed to order a home study or appoint a guardian ad litem?

4. Did the trial court abuse its discretion when, for purposes of child support, it found a net monthly income and then ignored this determination when awarding maintenance?

5. Did the trial court err when it failed to award Margery permanent maintenance?

6. Did the trial court make an unfair division of property?

7. Did the trial court fail to award Margery an adequate amount of attorney's fees?

### ANALYSIS

 1. *Custody.* In reviewing a trial court's award of custody, we are limited to determining whether the court abused its broad discretion. *Peterson v. Peterson,* 308 Minn. 365, 368, 242 N.W.2d 103, 106 (1976); *Kotila v. Kotila,* 351 N.W.2d 661, 662 (Minn.Ct.App.1984). The ultimate question which the trial court is required to consider is whether its determination of custody would serve the best interests of the child. *Berndt v. Berndt,* 292 N.W.2d 1, 2 (Minn.1980).

The trial court made the following findings relevant to its custody decision:

14. That both John and Margery are presently fit and proper persons to have the care, custody and control of their child, Ross. However, at the present time Ross' best interests are served by continued residence with Margery and liberal visitation with John.

12. That throughout the parties' 13 month separation the minor son, Ross, has been in the custody of Margery except during her hospitalization when John has cared for him. Ross has had very liberal visitation with his father.

13. That the Court had an opportunity to visit privately with Ross and found him to be an exceptionally bright, outgoing boy with above average communication skills. He has love and concern for both parents but recognizes the reality of their divorce. He desires to maintain a close relationship with both of them. He recognizes his mother's mental illness and responds more appropriately to it than most adults. His evaluation of what would be in his best interest is for him to continue to reside with his mother but to have liberal visitation with his father.

9. During John's alcoholism severe strains were placed upon the family. Margery appeared to possess the strength and demonstrated the ability to hold things together. During the 1970's she was the primary parent due to John's drinking and work. * * *.

11. Margery continues to suffer from a psychiatric disorder diagnosed as schizophrenia-paranoid type. However, she recognizes her need for continued treatment and medication * * *. The testimony indicates that if Margery continues her treatment and medication she can function normally, [and] handle the responsibilities of a parent * * *.

The above findings and the decision of the trial court to grant custody to Margery are supported by the record. The evidence upon which the trial court relied demonstrates that, although Margery continues to have mental problems, her behavior is neither dangerous nor detrimental to Ross. A psychotherapist from the Duluth Human Development Center testified that Margery is a responsible parent, cooperative, bright and interested in changing her behavior. She was surprised to learn of Margery's last hospitalization, and sees her as functioning at a normal or adequate level. She testified that Ross could live with Margery without detriment.

The parties' daughter Susan concluded that if it were determined that Margery's behavior did not affect Ross, he would be better off with Margery. A friend of Margery's, who had known her for 12 years, also testified on Margery's behalf, stating that she had not seen any problems with Margery's behavior towards her son, even though Margery admittedly did have some problems.

A career counselor also testified, indicating that Margery had completed the SOAR program, and that she was impressed with Margery's communication skills. However, after six weeks enrollment in a radiation therapy training program, Margery quit. Ross himself also indicated to the court in a

private consultation that he wished to remain with his mother.

Finally, Margery's psychiatrist stated in a deposition that Margery was not a danger to herself or others, that her psychological problems should be treated as any other illness, and that, except for the times when she was in the hospital, Margery was perfectly capable of being a parent. He concluded that in this instance her mental condition should not be viewed as a factor in making the custody decision. *See* Minn. Stat. § 518.17, subd. 1(c) and (g). However, he refused to offer an opinion on whether or not it was in Ross' best interest to be in the custody of Margery.

■ After careful review of the entire record in this matter and though we may have decided differently if we had been the trial judge, we cannot conclude that the trial court abused its discretion by awarding custody to Margery. Although the evidence demonstrates that Margery's behavior is somewhat unusual and at times bizarre and paranoid, and that she must continue treatment and medication for her problems, sufficient testimony at trial demonstrates that, under proper treatment and medication, she is capable of caring for Ross and that his best interests would be served by remaining with her.

■ 2. *Conditions of Custody.* John argues that even if the trial court properly granted custody of Ross to Margery, the court did not also provide for sufficient means by which John will be able to ascertain whether Margery is continuing to provide adequate care for Ross. We share this concern. The court issued the following order:

3. That respondent Margery Meyer shall, while she continues to have custody of Ross, maintain a regular course of treatment with a licensed psychiatrist, including the taking of prescribed medications, until discharged from such treatment by said psychiatrist. Annually, Margery Meyer shall provide a written report from such physician to John Meyer indicating her ability to continue to function as a parent.

4. That respondent, Margery Meyer, shall immediately enrole [sic] her son Ross in a counseling program, the purposes and duration of which shall be approved by the Human Development Center of Duluth, Minnesota. Petitioner John Meyer shall have access to the records which may be kept by the counselors for Ross.

By allowing John access to Ross' records, the court has provided him with one means of determining any effects upon his son caused by the actions or conduct of Margery. However, we believe it is possible that some of those effects might not manifest themselves in Ross' records. Although we do not reverse the trial court's judgment in this instance, we do urge the court upon remand to require more rigid safeguards with respect to John's ability to closely monitor Margery's condition while she has custody of Ross.

■ 3. *Guardian Ad Litem/Home Study.* John also argues that the trial court erred by failing to appoint a guardian ad litem for Ross and by failing to order a home study. Both of these acts are discretionary with the trial court. *See* Minn.Stat. §§ 518.165, 518.167, subd. 1 (1984). In addition, Minn.Stat. § 518.167, subd. 1 specifically indicates that a court may order a home study "if a parent or the child's custodian requests." Although John did request at the temporary hearing stage that a guardian ad litem be appointed, he did not pursue that request at further stages of this proceeding. We also note that John did not request a home study until after the trial had been completed.

Although we have upon several occasions urged that home studies be conducted and guardians ad litem be appointed when the interests of the parents and child differ, *Madgett v. Madgett,* 360 N.W.2d 411, 413 (Minn.Ct.App.1985); *M.M. v. R.R.M.,* 358

N.W.2d 86, 89 (Minn.Ct.App.1984), we continue to recognize that these decisions rest within the discretion of the trial court and should not be reversed absent abuse of that discretion. *Madgett,* 360 N.W.2d at 413. Here we cannot conclude that the trial court abused its discretion by failing to order a home study or appoint a guardian ad litem, but we note that this is exactly the type of situation where the interests of the child would be best served by the appointment of a guardian ad litem and an order for a home study.

**■■■ 4. *Maintenance.*** The court found that John's net monthly income was $1,310 for purposes of setting child support at the rate of $327 per month in conformance with the child support guidelines. The court thereafter awarded spousal maintenance to Margery in the amount of an additional $800 per month. Thus, the court has awarded $1,127 of John's $1,310 income.

Minnesota Statutes § 518.552, subd. 1 (1982) provides that maintenance shall be awarded if the spouse seeking it lacks sufficient property to provide for reasonable needs and is unable to adequately support herself considering all relevant circumstances. The issue in determining maintenance is basically the financial needs of the spouse receiving maintenance and the ability to meet those needs balanced against the financial condition of the spouse providing the maintenance. *Krick v. Krick,* 349 N.W.2d 350, 351–52 (Minn.Ct.App.1984) (citing *Erlandson v. Erlandson,* 318 N.W.2d 36 (Minn.1982)). It is conceded that Margery has a limited income and that she will need maintenance for a period of time.

The court has found, for purposes of child support, that the net monthly income of John is $1,310 per month. This finding is consistent with the evidence at trial. The court, in awarding maintenance in the amount of $800 per month, plus $327 in child support, left John with $183.

To compound the problem, the court awarded all of the cash assets of the parties to Margery, and then ordered John to immediately pay all arrearages due Margery and to pay the sum of $2,500 towards her attorney's fees, audit and appraisal fees, court costs and disbursements, and that said payment was to be due forthwith.

Based upon the evidence in the record, there is no demonstrable ability to pay the maintenance awarded by the court. The court found:

> He claims that his present gross salary is $28,000 [1] per year with a net monthly income of $1,300. Margery Meyer testified that many of his business transactions were accomplished with cash and tradeouts and his lifestyle sustains her contention. John Meyer has the ability to meet his needs as well as meeting the needs of Margery Meyer who is in need of maintenance.

This finding is inconsistent with the evidence at the trial. We therefore remand for further evidence of additional earnings and a determination of a proper amount of maintenance pursuant to Minn.Stat. § 518.-552.

*5. Permanent maintenance.* Margery claims the trial court erred by not awarding her permanent maintenance. The court awarded her $800 per month for five years, but "specifically retain[ed] jurisdiction to revise, if necessary, the amount and duration of the maintenance." As in *Servin v. Servin,* 345 N.W.2d 754, 758 (Minn.Ct.App. 1984), because the trial court has specifically reserved this right to review maintenance, we find Margery's claim premature.

**■■■ 6. *Property Division.*** In dividing the parties' property, a trial court has considerable discretion, and its decision will not be overturned on appeal, absent abuse. *Bogen v. Bogen,* 261 N.W.2d 606, 609 (Minn.1977); *Reck v. Reck,* 346 N.W.2d 675, 678 (Minn.Ct.App.1984). The division need not be mathematically equal, *Ruzic v. Ruzic,* 281 N.W.2d 502, 505 (Minn.1979);

1. The W–2 statement discloses $25,900.

*Johns v. Johns,* 354 N.W.2d 564, 566 (Minn. Ct.App.1984); and the court has discretion to award debts to one party only. *See Dahlberg v. Dahlberg,* 358 N.W.2d 76, 80 (Minn.Ct.App.1984).

The trial court did not abuse its discretion when it awarded Margery assets valued at $39,000, while awarding John assets valued at $129,000 and liabilities estimated at $158,000. The unusual facts of this case compel this determination, and the trial court did not err in its division of the parties' property.

7. *Attorney's Fees.* Margery has filed a cross-appeal on the issue of attorney's fees, claiming that the trial court's award was insufficient and that she should be awarded fees for this appeal. Margery's claim regarding the sufficiency of attorney's fees below was never presented to the trial court; therefore, it cannot be raised on appeal. *See Miller v. Miller,* 371 N.W.2d 248, 250 (Minn.Ct.App.1985). Margery's request for attorney's fees for this appeal is denied.

## DECISION

Affirmed in part and reversed and remanded in part.