J.W., a minor, by and through his mother, D.W., Petitioner, Appellant,

v.

C.M., a minor, and A.K.M., an infant child of C.M., Respondents,

and

Terry Braun, et al., Respondents.

No. C6–00–1500.

Court of Appeals of Minnesota.

May 22, 2001.

Anita A. Flatt, Zenas Baer & Associates, Hawley, MN, (for appellant).

Stuart J. Kitzmann, Kitzmann Law Firm, (for respondent C.M.); James Shoemaker, Shoemaker Law Office, Detroit Lakes, MN, (for respondent A.K.M.); DeAnn M. Pladson, Maring Williams Law Office, P.C., Fargo, ND, (for intervenors/respondents); and Mary Sorum, Thorwaldsen, Beeson, Malstrom, Sorum & Donehower, PLLP, Detroit Lakes, MN, (for guardian ad litem).

Considered and decided by HARRIET LANSING, Presiding Judge, ROBERT SCHUMACHER and G. BARRY ANDERSON, Judges.

## OPINION

G. BARRY ANDERSON, Judge

Appellant challenges the district court's order granting custody of his biological daughter to the child's foster parents. Appellant argues that the district court erred or abused its discretion by (1) permitting the foster parents to intervene; (2) concluding that it is in the child's best interests that custody be awarded to the foster parents; (3) ordering temporary supervised visitation; (4) ordering appellant to undergo a parenting evaluation; and by (5)

admitting the guardian ad litem's report into evidence. The temporary visitation order is unappealable and the parenting evaluation is not part of the record in this case; accordingly, we do not review those issues. Because the district court acted within its discretion in allowing intervention, granting custody, and admitting the guardian ad litem's report, we otherwise affirm.

## FACTS

On April 29, 1999, daughter A.K.M. was born to juvenile C.M. (now age 18). Appellant J.W. (now age 17) is the child's biological father. Soon after learning C.M. was pregnant, appellant informed her that he would not consent to an adoption, and expressed his desire to keep and raise the child. But before the child's birth, respondent C.M., with the help of a counseling service, decided to give the baby up for adoption and chose respondents Terry and Susan Braun, ages 37 and 36, respectively, to be the adoptive parents. The Brauns have a biological daughter, B.B., now age nine. Baby A.K.M. has been cared for by the Brauns since May 1, 1999.

On June 19, 1999, appellant petitioned for custody through his mother, D.W. At appellant's request, the district court appointed a guardian ad litem for the child, ordered genetic testing, and granted appellant supervised visitation. Appellant missed approximately one-third of the scheduled visitations. On January 6, 2000, the district court granted the Brauns' motion to intervene. In April 2000, the district court extended appellant's visitation schedule but denied his motion for summary judgment against the Brauns and ordered a custody trial.

Appellant has a seventh-grade education and, with his mother's permission, dropped out of high school at age 16. Appellant, burned in a 1985 house fire, receives annuity payments as part of the settlement of his personal-injury claim. Appellant suffers no permanent disability and works approximately full-time for his father, earning between five and six dollars per hour as a drywall hanger. Appellant paid the hospital expenses of A.K.M. and C.M., and testified that he had experience bathing and feeding small children. Appellant also explained that his mother intended to help him raise A.K.M. Appellant testified that his family supports his decision to raise A.K.M. in the home where he, his mother, a sister, a brother, his mother's boyfriend, and the boyfriend's daughter reside. The family prepared a room in their home for A.K.M., purchased a crib and toys, and made other home improvements in anticipation of having a child in the residence.

D.W. testified on appellant's behalf and explained that her own experience raising four children, together with her past experience as a day-care provider, would enable her to assist appellant in raising his daughter. D.W. assisted appellant in bringing this custody action; she completed the necessary forms for appellant's registration with the Adoptive Father's Registry, communicated with the adoption coordinator, sent out birth announcements, and arranged appellant's visitations with A.K.M.

The guardian ad litem visited the home and assessed the parenting abilities of appellant and his mother. The guardian ad litem identified problems that led her to conclude that placement with the Brauns was in A.K.M.'s best interests. Both appellant and D.W. were identified as having unresolved chemical-use problems. In addition, the guardian ad litem observed many unsafe conditions in the appellant's home, and her research uncovered difficulties between D.W. and local authorities.

In contrast, the guardian ad litem described the Braun home as loving, safe, and filled with age-appropriate toys. The Brauns operate a day-care and preschool facility in their home and the guardian ad litem regarded their care of children as "excellent." An expert testified on behalf of respondents and explained the attachment an infant develops with caregivers and explained attachment disorder and other risks a child in A.K.M.'s situation would face if her custody were to change. The district court applied the statutory "best interests of the child" factors and awarded the Brauns permanent legal and physical custody of A.K.M.

## ISSUES

I. Did the district court abuse its discretion by permitting the foster parents to intervene in the custody action?

II. Did the district court abuse its discretion by awarding custody of A.K.M. to the foster parents?

III. Did the district court abuse its discretion by ordering supervised visitation between appellant and A.K.M.?

IV. Did the district court abuse its discretion by ordering appellant to undergo a parenting evaluation?

V. Did the district court abuse its discretion by admitting into evidence the guardian ad litem's report?

## ANALYSIS

### I.

▮▮▮ Appellant first argues that the district court abused its discretion by permitting respondent foster parents, Terry and Susan Braun, to intervene in this custody action. Permissive intervention rulings are reviewed under an abuse-of-discretion standard. *Norman v. Refsland,* 383 N.W.2d 673, 676 (Minn.1986).

Minn. R. Civ. P. 24.02 provides that district courts, in their discretion, may permit intervention where the applicant's claim or defense and the main action have a common question of law and fact if doing so would not unduly delay or prejudice the adjudication of the rights of the original parties. *Id.* In this case, the Brauns, as A.K.M.'s legal custodians, share with appellant a common claim to custody of the child. Although appellant argues that the foster-parent/child relationship is insufficient to support the permissive intervention granted by the district court here, the supreme court has recognized that, where intervention was sought as a matter of right, "[i]n certain circumstances, it may be appropriate for a [district] court to allow foster parents to intervene * * *." *Valentine v. Lutz,* 512 N.W.2d 868, 871 (Minn.1994) (addressing intervention as a matter of right).

Appellant argues that intervention was not appropriate in this case because he suffered undue delay and hardship. Appellant claims the custody matter would have been resolved "immediately" had the Brauns not intervened. We disagree. Minn.Stat. § 518.156, subd. 1(b) (2000), provides that a custody action may be commenced by a "person other than a parent, where a * * * dissolution or legal separation has been entered or where none is sought." *Id.; see also In re E.A.Q.D.,* 405 N.W.2d 262, 264 (Minn.App.1987) (nonparent with whom child has been placed has standing to seek permanent custody). Because C.M. and appellant never married, no dissolution was entered or sought. Consequently, the Brauns had standing under Minn.Stat. § 518.156, subd. 1(b), to bring their own custody action. *See LaChapelle v. Mitten,* 607 N.W.2d 151, 158–59 (Minn.App.2000) (explaining that a nonparent third party has standing to bring custody action pursuant to Minn.Stat. § 518.156 where dissolution not sought),

*review denied* (Minn. May 16, 2000). Had the district court denied the Brauns' motion to intervene, they could have simply commenced a parallel custody proceeding. The district court did not abuse its discretion by permitting, in the interests of judicial economy, the Brauns' intervention.

▇ Appellant also argues that the adoption agency acted improperly by placing A.K.M. in foster care with the Brauns without his consent. Appellant contends that the district court's failure to recognize those alleged mistakes in granting intervention constitutes an abuse of discretion. This custody action is not, however, part of an adoption proceeding commenced under Minn.Stat. § 259.22 (2000), and the agency appellant accuses of wrongdoing is not a party to this litigation. We decline to reach appellant's adoption claims because they were neither considered nor decided by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988).

## II.

▇ Appellant next argues that the district court abused its discretion by awarding permanent legal and physical custody of A.K.M. to the Brauns. Appellant contends that the record does not show sufficient reason to deprive him of custody and that respondents did not·rebut the presumption of parental fitness. District courts have broad discretion to determine matters of custody. *Durkin v. Hinich*, 442 N.W.2d 148, 151 (Minn.1989). "Appellate review of custody determinations is limited to whether the [district court] abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985).

▇ The general rule that a natural parent is presumed fit to have custody of his child emerged from cases involving

proof of unfitness in terminating parental rights. *In re Welfare of P.L.C.*, 384 N.W.2d 222, 225 (Minn.App.1986). When deciding custody disputes between a parent and a third party, the presumption that a natural parent is entitled to custody of his own child will not be overturned unless it

> clearly appears that [the parent] is unfit or has abandoned [the parent's] right to custody, or unless there are some extraordinary circumstances which would required [the parent] be deprived of custody. ·

*Wallin v. Wallin*, 290 Minn. 261, 264, 187 N.W.2d 627, 629 (1971).

Minnesota statutes and case law, however, recognize that a district court's primary commitment in matters concerning custody is the best interests of the child. *See* Minn.Stat. § 518.17, subd. 1(a) (2000) (enumerating best interest factors); *Olson v. Olson*, 534 N.W.2d 547, 549 (Minn.1995) (referring to the "paramount commitment to the best interest of the children"); *see also Frauenshuh v. Giese*, 599 N.W.2d 153, 157 (Minn.1999) (stating that child's best interests are "paramount" concern in resolution of custody issues) (citation omitted). Because he was adjudicated A.K.M.'s father, appellant's custody rights are decided as an initial custody determination under Minn.Stat. § 518.17 (2000). *See* Minn.Stat. § 257.541, subd. 3 (2000). Minn.Stat. § 518.17, subd. 1(a), governs custody disputes and enumerates 13 "best interests" factors that district courts must consider when making a custody determination. *Id.*

▇ *Wallin* and subsequent case law make clear that the "best interests of the child" is "the primary test" to be applied in awarding custody, including disputes between a natural parent and a third party. *See LaChapelle*, 607 N.W.2d at 161 (citing

*Wallin* and explaining the test). In this case, the district court addressed the statutory factors and determined that it would be in A.K.M.'s best interests to remain in the Brauns' custody.

## A. Findings

■■■■ Appellant disputes many of the district court's findings concerning the best-interest factors. District court findings are sustained unless they are clearly erroneous. *Pikula*, 374 N.W.2d at 710. In order for a finding to be clearly erroneous, we must be left with a "definite and firm conviction that a mistake has been made." *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn.App.2000) (citation omitted). In addition, we view the record in the light most favorable to the findings and defer to a district court's credibility determinations. *Id.* "That the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Id.* at 474.

The district court was required to make findings concerning (1) the wishes of the parties; (2) the role of the child's primary caretaker; (3) the relationship between the parties and the child; (4) the intimacy and interaction between the child and those persons who may affect the child's interests; (5) the child's adjustment to home and community; (6) the length of time the child has lived in a stable environment and the importance of continuity; (7) the permanence of a proposed custodial home; (8) the mental and physical health of the individuals involved; and (9) the capacity of the parties to give the child love, affection, guidance, and education. *See* Minn.Stat. § 518.17, subd. 1(a) (providing 13 best-interest factors).[1]

## 1. Wishes of the Parties

The district court found that this factor favored the Brauns because appellant's mother served as the impetus behind his claim to A.K.M.'s custody. The evidence shows D.W. handled all of appellant's business with the adoption registry and arranged visitations. In her absence, appellant missed visitations. On one occasion, D.W. advised appellant to attend visitation despite her absence because otherwise "it would look bad in court."

## 2. The Child's Primary Caretaker

The district court found that this factor favored the Brauns, who served as A.K.M.'s primary caretakers. The Brauns began caring for A.K.M. two days after her birth and the guardian ad litem regarded their care as excellent. The district court expressly recognized that this factor alone does not determine custody. *See* Minn.Stat. § 518.17, subd. 1 (2000) (stating "primary caretaker factor may not be used as a presumption in determining the best interests of the child").

## 3. Intimacy Between Parent and Child

The district court found a strong attachment existed between A.K.M. and the Brauns but none existed between A.K.M. and appellant because of his canceled and failed visitations. Appellant argues that he was not afforded the opportunity to develop a relationship with A.K.M., but the record shows he cancelled or missed nearly one-third of the scheduled visitations. When he did attend visitations, appellant sometimes left early, did not interact significantly with A.K.M., and often D.W. spent most of the scheduled time playing with or holding the child. Appellant never telephoned the Bruans to inquire about his

---

1. Several factors are not applicable in this case: the child's preference, the child's cultural background, and factors that relate to child abuse and contact between parents.

daughter and never recognized her first Christmas or birthday with gifts or other contact.

### 4. Interaction and Interrelationship of Child with Others Who May Significantly Affect the Child's Best Interests.

The district court found there is a positive relationship between B.B. and A.K.M., a finding supported by the guardian ad litem's testimony and report. The district court found that the activity at appellant's home is cause for law-enforcement concerns from time to time and that D.W. furnished her minor children with alcohol. Uncontested testimony from a deputy sheriff supports these findings.

### 5. Child's Adjustment to Home and Community

The district court found this factor favored the Brauns. The guardian ad litem found the Braun home to be a safe, enriching environment filled with age-appropriate toys and observed that A.K.M. is meeting all developmental criteria.

### 6. Length of Time Child Has Lived in a Stable Environment

The district court found that this factor favored the Brauns, who own and operate a day care and preschool and meet all of A.K.M.'s needs. The district court found that the proposed custodial home with appellant presents an undesirable living environment for the child. The guardian ad litem twice visited the home and described the yard as a "horrible mess" filled with 12 junked cars and an abandoned trailer. The guardian ad litem described the basement, including appellant's bedroom, as a "squalid mess." Large dogs growled at the guardian ad litem and at a smaller child in the home. D.W. explained to the guardian ad litem that some doors in the home had missing knobs because pet raccoons had destroyed them. The guardian ad litem observed posters of a naked woman and the grim reaper, and saw cats walking around on the kitchen countertops. The guardian ad litem reported dirty, worn rugs and linoleum flooring pieced together with a strip of wood.

A social worker also visited the home and testified that she observed: (1) dangerous stair railings; (2) large dogs, which she was told may have been part wolf and which she perceived as a threat to the child; (3) a sliding glass door that opened not to a deck, but to the outside high above the ground; (4) an open foundation; and (5) automobiles in the back yard. The photographs introduced as exhibits depict these and other safety concerns, including doors missing from lower kitchen cabinets. In addition, an expert explained the parent-child attachment risks A.K.M. would face if placed in appellant's care.

### 7. Permanence, as a Family Unit, of the Existing Proposed Custodial Home

The district court found that this factor favors the Brauns. Appellant's family is his only support system because, as he explained when asked why he did not complete a form listing six names of friends, neighbors, teachers, or anyone who knew him well, he did not have six friends. In addition, contacts made by the guardian ad litem volunteered that the home was "not a good environment."

### 8. The Mental and Physical Health of the Parties Involved

The district court found that this factor favored the Brauns because appellant has unresolved chemical-use issues. D.W. testified that appellant, a minor, drank alcohol in January of 2000, and had smoked marijuana in the past but had not done so

within four months of trial. The district court specifically found D.W.'s testimony not credible. School officials suspended appellant several times for alcohol and tobacco consumption on school grounds, and appellant twice dropped out of a chemical-treatment program. A counselor testified that appellant is in need of treatment. D.W.'s testimony concerning her own alcohol and drug use supports the district court's finding that she, too, has unresolved chemical-use issues.

9. *The Capacity and Disposition for the Parties to Give the Child Love, Affection, and Guidance, and to Continue Educating and Raising the Child in the Child's Culture and Religion or Creed*

The district court found that this factor also favored the Brauns because of the nurturing home environment they maintain and their specific testimony concerning their plans for raising A.K.M. The record shows that the Brauns have prepared for A.K.M.'s preschool, elementary-school, and high-school education, and are financially preparing for her college expenses. The Brauns attend church weekly and involve A.K.M. in observing their faith there and at home through meal and bedtime prayers. Susan Braun testified at length concerning the Brauns' parenting and discipline style. Appellant, in contrast, offered limited testimony concerning his plans for A.K.M.'s care. When asked about his plans for raising A.K.M., J.W. testified, with no elaboration, that he would feed her, bathe her, and make sure she got to school.

Each of the findings has ample basis in the record, and although appellant and D.W. often supplied contrary testimony, the district court expressly found some of their testimony not credible or relied on expert opinion, and we defer to such determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988) (criticizing this court as going beyond its scope of review in a custody appeal by reweighing evidence). Accordingly, we conclude that the district court's findings concerning A.K.M.'s best interests are not clearly erroneous.

**B. Unfitness**

Appellant argues that these findings, even if not clearly erroneous, fail to rebut the presumption of parental fitness. Appellant contends that mere poverty is insufficient to show unfitness and claims that he never had the opportunity to establish a relationship with A.K.M.

Because of the inherent lack of objective custody factors, this court has recognized that "current law leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations" when the decision is supported by defensible findings. *Vangsness*, 607 N.W.2d at 477. All of the district court's best-interests findings support the custody award to the Brauns. Since her birth, the Brauns have served as A.K.M.'s primary caretaker, providing excellent care and meeting her medical, educational, physical, and emotional needs in a warm, loving, and supportive environment. The Brauns, who operate a day-care and preschool, have a safe home filled with age-appropriate toys, and presented evidence of specific plans for meeting A.K.M.'s future needs, including planning for her college education. A.K.M. has a close relationship with her foster sister, B.B.

The findings also show that appellant is not presently fit to parent A.K.M. Appellant pursued custody of A.K.M. at the urging of, and with significant help from, his mother, D.W. The findings show that appellant did not take advantage of many of the scheduled visitations to bond with his daughter, and during those he attend-

ed, D.W., rather than appellant, interacted with A.K.M. Appellant never telephoned the Brauns to ask about A.K.M. and never recognized her on her birthday or at Christmas. Appellant, age 15 at A.K.M.'s birth, dropped out of school at age 16 after problems with alcohol, drugs, and truancy. While appellant testified that he had some babysitting experience, he had difficulty explaining exactly how he would care for A.K.M.

A social worker and the guardian ad litem identified problems in the appellant's home that would have profound effects on A.K.M., including appellant's unaddressed chemical-use problems, the fragile family unit, and numerous, significant, health and safety concerns. *See Durkin*, 442 N.W.2d at 152–53 (holding no abuse of discretion in finding presumption of parental fitness overturned where experts testified that returning child to natural parent would be detrimental to child). The district court took pains to explain that the custody conclusion in this case was not based on the Brauns' role as A.K.M.'s primary caretaker, nor was it based on the limited income of appellant's family. Although it is not disputed that appellant and his mother care about A.K.M. and wish to have her in their lives, on this record, we cannot say the district court abused its broad discretion by determining that respondents had overturned the presumption that appellant was fit to parent A.K.M. and that it was in A.K.M.'s best interests to be in the custody of the Brauns.[2]

### III.

◼ Appellant next challenges, as an abuse of discretion, the district court's pre-

trial order that visits between appellant and A.K.M. be supervised. As a preliminary matter, the district court's order was temporary, made pursuant to Minn.Stat. § 518.131 (2000). In its conclusions of law, the district court has reserved the issue of future visitation. Because a temporary order made under Minn.Stat. § 518.131 is generally not a final, appealable order, we decline to address this issue. *See* Minn. R. Civ.App. P. 103.03 (addressing appealable judgments and orders); *see also Hennepin County v. Griffin*, 429 N.W.2d 283, 284 (Minn.App.1988) (order denying temporary custody not a final, appealable order).

### IV.

◼ Appellant also argues that the district court abused its discretion by ordering appellant to undergo a parenting evaluation, and contends that the report is not trustworthy. When addressing custody, district courts are required to

make detailed findings on each of the factors and explain how the factors led to its conclusions and to the determination of the best interests of the child.

Minn.Stat. § 518.17, subd. 1(a). As part of the proceeding, "the court may order an investigation and report concerning custodial arrangements for the child." Minn. Stat. § 518.167, subd. 1 (2000). The decision to order such a report will not be overturned absent an abuse of discretion. *Meyer v. Meyer*, 375 N.W.2d 820, 826 (Minn.App.1985), *review denied* (Minn. Dec. 30, 1985).

◼ In this case, on the guardian ad litem's motion, the district court ordered appellant to undergo a parenting evaluation. The order reads, "[t]he Court will

---

2. Significantly, this is not a termination-of-parental-rights case commenced under Minn. Stat. § 260C.301 (2000), which involves a more stringent test and the fulfillment of one or more statutory factors. Nor is this an

adoption proceeding commenced under Minn.Stat. § 259.22 (2000). *Custody* is at issue here, not appellant's status as A.K.M.'s parent.

only consider the 'capacity to parent evaluation' for visitation purposes and the report will have no impact on the Court's final decision in this [custody] matter." The district court did not rule on the issue of visitation, but instead reserved it pending the outcome of the evaluation. The date of the evaluation, July 5, 2000, falls after the district court's order in this case, June 26, 2000, and the evaluation was not admitted into evidence during the custody proceeding. Consequently, the evaluation is outside the record in this case. *See* Minn. R. Civ.App. 110.01 (providing that the record on appeal includes papers and exhibits filed in the district court, together with transcripts). We decline to review the district court's discretion in ordering a report because the report was not the basis of any district court order now on appeal.

## V.

 Finally, appellant contends that the district court abused its discretion by admitting the guardian ad litem's report into evidence. Whether to receive evidence is discretionary with the district court. *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990).

 Appellant requested that the guardian ad litem be appointed by the court, and Minn.Stat. § 518.165, subd. 2a(5) (2000), provides that the guardian ad litem "shall" make "written reports on the child's best interests" including "recommendations and the facts upon which they are based." *Id.* The reports made for the purposes of a court-ordered evaluation are admissible as business records under Minn. R. Evid. 803(6). *In re Welfare of R.T.,* 364 N.W.2d 884, 886 (Minn.App. 1985). The admission of such records does

not constitute an abuse of discretion if the parties were given an opportunity to cross-examine the author of the report. *See Timmons v. Timmons,* 298 Minn. 523, 524, 213 N.W.2d 335, 336 (1973) (no abuse of discretion where investigator subject to cross-examination).

The record establishes that appellant was permitted to see the contents of the report well before trial and that the guardian ad litem was subjected to rigorous and lengthy cross-examination. In addition, the guardian ad litem testified that County Deputy Sheriff Jay Nelson served as her contact for the law-enforcement-report information that appellant deems objectionable. Respondents called Nelson as a witness but appellant elected not to subject him to cross-examination despite his availability. Accordingly, the district court did not abuse its discretion by admitting the guardian ad litem's report into evidence.[3]

## DECISION

The district court did not abuse its discretion by (1) permitting the foster parents to intervene in the custody proceeding; (2) determining that appellant is unfit to parent and that application of the statutory best-interest factors supports granting custody of the child to the foster parents; or by (3) admitting the guardian ad litem's report into evidence under the business-record exception to the hearsay rule. We decline to review appellant's claims concerning supervised visitation and the parenting evaluation because they are not properly before us.

**Affirmed.**

---

3. At oral argument, appellant disputed the joint brief submitted by the Brauns and the guardian ad litem. Because there is no rule of Minnesota Civil Appellate Procedure pre-

cluding joint briefing by parties with shared interests, and because we see no prejudice here, we decline to assign error to respondents' brief.