*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1263**

In re the Matter of:

Zoraba Ross, petitioner,
Respondent,

vs.

Angel Raeleen Smith,
Appellant.

**Filed May 28, 2024**
**Affirmed in part and remanded**
**Wheelock, Judge**

Hennepin County District Court
File No. 27-FA-21-1872

Richard D. Crabb, Hill Crabb, LLC, Edina, Minnesota (for respondent)

Michael D. Dittberner, Dittberner & McSweeney, Ltd., Edina, Minnesota; and

Kimberly Tourdot Walker, Kimberly T. Walker Law Office, P.A., St. Louis Park,
Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Slieter, Judge; and Schmidt,

Judge.

**NONPRECEDENTIAL OPINION**

**WHEELOCK**, Judge

In this appeal from a custody award, appellant mother argues that the district court

abused its discretion by (1) awarding respondent father joint legal custody, joint physical

custody, and equal parenting time; (2) omitting certain holidays from the holiday parenting-time schedule; and (3) limiting vacation parenting time to the month of July. Because the district court's findings are insufficient to permit appellate review of the holiday parenting-time schedule, we remand for further findings on that issue. We affirm in all other respects.

## FACTS

Appellant mother Angel Raeleen Smith and respondent father Zoraba Ross share one minor child, A.Z.R., born in Minnesota in March 2021. Mother and father were never married, but they were in a romantic relationship throughout mother's pregnancy. Father helped mother through her high-risk pregnancy, and the parties planned to raise the child together. Both parties signed the child's birth certificate, and father signed a recognition of parentage acknowledging his paternity of the child. However, six days after the child's birth, the parties had an argument, and mother took the child to Florida, where her family lives, without father's knowledge.

On April 12, 2021, father filed a petition in district court requesting joint legal custody, joint physical custody, and a shared parenting-time schedule. He also filed an emergency motion requesting an order for mother to return the child to Minnesota. On May 19, 2021, the district court ordered mother to return to Minnesota with the child within two weeks and awarded father three hours of parenting time every Wednesday, Saturday, and Sunday, for a total of nine hours per week.

Shortly after the hearing, the parties agreed to participate in a custody and parenting-time evaluation and agreed on an evaluator, but the evaluation was never

conducted. In October 2021, the district court appointed a custody evaluator and ordered an evaluation. In letters to each other and the district court, the parties accused each other of causing delays with the custody evaluation. Because of the delays and because custody evaluations can take more than six months, father moved the district court in February 2022 for a temporary order granting him equal parenting time. After the parties' initial meeting with the evaluator in March 2022, the evaluator appointed by the district court declined to take the case because father had accused her of being biased against fathers. The district court later granted father additional, but not equal, parenting time.

Throughout the litigation, the parties had difficulty cooperating with each other on parenting time and disagreed on the child's feeding and medical care. Father criticized mother for being overly controlling while the child was in his care, taking the child to excessive medical appointments, and excluding father from medical decisions, which he believed demonstrated that mother suffered from mental-health conditions. Mother criticized father for being hostile to her around the time of the child's birth, bullying her by accusing her of having mental-health conditions, interfering with the child's medical care when they attended appointments together, harassing her during parenting-time exchanges at a police station, and calling the police to check on the child when he could not reach her. Both parties submitted affidavits and numerous exhibits in support of their positions. Both parties filed police reports following parenting-time exchanges in which they perceived the other as hostile.

Nevertheless, mother offered father the opportunity to spend time with the child on holidays that were not part of his parenting-time schedule and accommodated his schedule

when he was unable to conduct exchanges at specified times. She also told him that she hoped they could trust each other more in the future as the child grew older.

Mother continued to request that the district court appoint a new evaluator, stating that the case should not proceed to trial without an evaluation, but the district court scheduled trial without ordering an evaluation. The district court conducted the trial in January 2023.

In March 2023, the district court entered a judgment and decree granting joint legal custody, joint physical custody, and equal parenting time. Relevant to this appeal, the district court found that, although the parties had difficulties cooperating during the litigation, those difficulties were not reflective of the parties' ability to cooperate in the future. In support of its finding, the district court cited the parties' love for the child, shared values, father's care for mother during her pregnancy, and mother's cooperation and flexibility regarding parenting time. The district court also observed that the parties' conflicts arose in the context of litigation, unequal parenting time, and uncertainty regarding father's parental rights related to medical decisions and picking the child up from daycare. To facilitate cooperation and reduce conflict, the district court ordered the parties to use Our Family Wizard[1] to communicate about parenting-time exchanges, conduct exchanges at neutral locations that were not police stations, alternate taking the child to medical appointments, and mediate disputes before initiating further litigation.

_____

[1] Our Family Wizard is a court-approved communication tool for families that have difficulty with communication.

Mother filed a motion for amended findings and a new trial. The district court denied the motion except to amend one finding not relevant to this appeal.

Mother appeals.

**DECISION**

Mother argues that the district court abused its discretion by (1) awarding father joint legal custody, joint physical custody, and equal parenting time; (2) omitting certain holidays from the holiday parenting-time schedule that the parties asked the district court to include; and (3) limiting vacation parenting time to the month of July. We address these arguments in turn.

I. **The district court acted within its discretion when it granted father joint legal custody, joint physical custody, and equal parenting time.**

Mother challenges the district court's awards of joint legal custody, joint physical custody, and equal parenting time, arguing that (1) the district court's findings regarding the parties' willingness and ability to cooperate are clearly erroneous, (2) the district court abused its discretion by ordering the parties to alternate taking the child to medical appointments, and (3) the district court abused its discretion by proceeding to trial and issuing its order without a custody and parenting-time evaluation.

"District courts have broad discretion on matters of custody and parenting time." *Hansen v. Todnem*, 908 N.W.2d 592, 596 (Minn. 2018). "Caselaw 'leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations.'" *Ewald v. Nedrebo*, 999 N.W.2d 546, 551 (Minn. App. 2023) (quoting *Vangsness v. Vangsness*, 607 N.W.2d 468, 477 (Minn. App. 2000)), *rev. denied* (Minn.

5

Feb. 28, 2024). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quoting *Bender v. Bernhard*, 971 N.W.2d 257, 262 (Minn. 2022)). When applying the clear-error standard of review, this court (1) views the evidence in the light most favorable to the district court's findings, (2) does not reweigh the evidence, (3) does not engage in fact-finding, (4) does not reconcile conflicting evidence, and (5) "need not go into an extended discussion of the evidence to prove or demonstrate the correctness of the findings of the [district] court." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021); *see Ewald*, 999 N.W.2d at 552 (citing *Kenney* in a family-law appeal).

### A. The evidence supports the district court's finding that mother and father are willing and able to cooperate in the rearing of the child.

Mother first argues that the district court's findings that the parties are willing and able to cooperate are clearly erroneous because the findings are speculative and not supported by the evidence. "[T]he willingness and ability of parents to cooperate in the rearing of their child; to maximize sharing information and minimize exposure of the child to parental conflict; and to utilize methods for resolving disputes regarding any major decision concerning the life of the child" is one of 12 best-interests factors that the district court considers in making custody and parenting-time determinations. Minn. Stat.

6

§ 518.17, subd. 1(a) (2022). Evidence related to this factor is also relevant to the following four additional best-interests factors:

> (1) [the] child's physical, emotional, cultural, spiritual, and other needs, and the effect of the proposed arrangements on the child's needs and development; . . .
> (6) the history and nature of each parent's participation in providing care for the child;
> (7) the willingness and ability of each parent to provide ongoing care for the child; to meet the child's ongoing developmental, emotional, spiritual, and cultural needs; and to maintain consistency and follow through with parenting time; [and] . . .
> (11) . . . the disposition of each parent to support the child's relationship with the other parent and to encourage and permit frequent and continuing contact between the child and the other parent[.]

*Id.*, subd. 1(a)(1), (6), (7), (11). Here, when the district court analyzed these best-interests factors, it considered evidence of mother's and father's willingness to cooperate in rearing the child, maximize sharing information, minimize exposure to parental conflict, and utilize methods for resolving disputes.

We have held that, "[w]here the evidence indicates that the parties lack the ability to cooperate and communicate, joint legal custody is not appropriate." *Wopata v. Wopata*, 498 N.W.2d 478, 482 (Minn. App. 1993); *see also Digatono v. Digatono*, 414 N.W.2d 498, 502 (Minn. App. 1987) (affirming denial of joint legal custody when "the turmoil in [the parties'] relationship ha[d] been so intense . . . that any significant contact between the parties is likely to result in further tension, and may in fact result in physical confrontations"), *rev. denied* (Minn. Jan. 15, 1988); *Andersen v. Andersen*, 360 N.W.2d 644, 646 (Minn. App. 1985) (affirming denial of joint legal custody when "[t]he parties

demonstrate[d] intense anger toward one another" and the child felt "caught in a tug-of-war").

Mother argues that the district court misconstrued certain communications about parenting time as demonstrating cooperation rather than conflict and that father's own testimony undermines the district court's findings in various ways, including that he admitted to his role in the parties' conflicts, the need for court intervention during the litigation, and his legal disputes with the mother of his now-adult child. Mother also asserts that the district court overemphasized evidence of cooperation from around the time of the child's birth, which she argues is weak in comparison to the more recent evidence of conflict.

The record here contains evidence of both conflict and cooperation, and it is not this court's role to reconcile conflicting evidence. *See Vangsness*, 607 N.W.2d at 474, 475 (stating, "[t]hat the record might support findings other than those made by the [district] court does not show that the court's findings are defective," and observing that "[w]e cannot reweigh the evidence presented to the [district] court"). The parties' parenting-time communications demonstrate that mother willingly accommodated father's scheduling conflicts and offered extra parenting time. Father testified that he wanted to work together with mother and be involved in the child's life, and the district court specifically stated that it found this testimony credible. The district court acknowledged that the record also contains evidence of conflict, which demonstrates that the district court took that evidence into account in reaching its decision.

Mother argues that the district court's findings related to the parties' willingness and ability to cooperate were speculative. But a district court's balancing of the best-interests factors is necessarily forward-looking, and we have affirmed joint awards when the record contains some evidence of cooperation, demonstrates that both parties care for the child, and supports the conclusion that the parties' conflicts will likely subside after the litigation ends. *See Veit v. Veit*, 413 N.W.2d 601, 605 (Minn. App. 1987) (rejecting the argument that the parties were unable to cooperate "on any level" because evidence supported the district court's "finding [that] the parties' inability to cooperate was of relatively recent origin"); *Berthiaume v. Berthiaume*, 368 N.W.2d 328, 332-33 (Minn. App. 1985) (determining that evidence supported the district court's finding, "in spite of current conflict," that "the parties would be able to cooperate as necessary after the custody issue was put to rest"); *Schultz v. Schultz*, 358 N.W.2d 136, 139 (Minn. App. 1984) (affirming a district court's joint-custody award in a case in which "current conflict" existed but evidence showed that the parties "would be able to cooperate as necessary once the anguish of the dissolution proceeding was past"). Here, the district court properly considered evidence of cooperation around the time of the child's birth because that evidence speaks to the parties' ability to cooperate outside the context of litigation.

Moreover, we have affirmed an award of joint physical custody despite evidence of conflict when the district court found that the parties were capable of complying with a custody arrangement that was structured. *Crosby v. Crosby*, 587 N.W.2d 292, 295-96 (Minn. App. 1998), *rev. denied* (Minn. Feb. 18, 1999). Here, the district court concluded that placing the parties on equal footing by awarding joint legal custody, joint physical

9

custody, and equal parenting time would reduce conflicts that arose out of the previous lack of structure. It then implemented specific tools to create structure, reduce conflict, and facilitate cooperation in the custody arrangement, including communicating via Our Family Wizard over father's objection, conducting parenting-time exchanges at neutral locations, alternating who takes the child to medical appointments, and mediating disputes.

We conclude that the district court's findings about the parties' willingness and ability to cooperate are not clearly erroneous. Therefore, we affirm the district court's order granting joint legal custody, joint physical custody, and equal parenting time.

**B.** **The district court acted within its discretion when it ordered mother and father to alternate bringing the child to medical appointments.**

Mother next argues that the district court abused its discretion by ordering the parties to alternate bringing the child to medical appointments, arguing that (1) the district court's finding that the doctor's visits were excessive is clearly erroneous because many of the "visits" were telephone calls, telemedicine contacts, prescription refills, and COVID-19 tests and, (2) because father criticized mother for taking the child to the doctor excessively, the arrangement could jeopardize the child's health.

The district court's finding that mother's approach to the child's medical care was excessive is supported by the record, which includes voluminous medical records and no evidence of a chronic health condition. The record also contains evidence supporting the district court's findings that both parties cared about the child's health and well-being. Although father's approach to the child's medical care was more moderate than mother's, there is no evidence in the record that father will harm the child by interfering with her

10

necessary care. The district court found that the arrangement was in the child's best interests because it would facilitate father's exercise of legal custody, information-sharing, and joint decision-making, all of which may reduce conflict regarding the child's medical care. The district court also found that the child would benefit from father's participation because father has prior parenting experience.

These findings are supported by the record, and therefore, they are not clearly erroneous. We thus conclude that the district court did not abuse its discretion when it determined that alternating which parent brings the child in for medical appointments is in the child's best interests.

### C. The district court acted within its discretion when it proceeded to trial without a custody and parenting-time evaluation.

Mother challenges the district court's decision to proceed to trial without a custody and parenting-time evaluation, arguing that the district court's findings supporting that decision are inadequate and that the district court should have ordered an evaluation because of the parties' conflicts.

Custody evaluations are not required. *See* Minn. Stat. § 518.167, subd. 1 (2022) (stating that "the court *may* order an investigation and report" (emphasis added)). And the supreme court has acknowledged that they "may not adequately provide . . . needed insight in particular cases." *Pikula v. Pikula*, 374 N.W.2d 705, 712 (Minn. 1985). We review a district court's decision not to order a custody evaluation for an abuse of discretion. *Meyer v. Meyer*, 375 N.W.2d 820, 826 (Minn. App. 1985), *rev. denied* (Minn. Dec. 30, 1985). This discretion is "extremely broad." *Sheeran v. Sheeran*, 401 N.W.2d 111, 117 (Minn. App.

11

1987); *see also Meyer*, 375 N.W.2d at 827 (affirming the district court's decision not to order an evaluation despite evidence demonstrating "exactly the type of situation where the interests of the child would be best served by . . . an order for a home study").

The district court determined that a custody and parenting-time evaluation would be of little value in this case and thoroughly explained its reasoning in its order. The district court noted that the record was well developed; the child was too young to express her preferences; the parties had not raised any credible issues of domestic abuse, mental-health concerns, or chemical dependency; and both parties are educated and fully employed. The district court also explained that the need for a permanent custody arrangement outweighed the value, if any, of an evaluation because it would not be in the child's best interests to further delay resolution.

These findings are supported by the record and sufficiently explain the district court's decision not to order an evaluation. We therefore conclude that the district court did not abuse its discretion by proceeding to trial without a custody and parenting-time evaluation.

## II. The district court's findings regarding the holiday parenting-time schedule are insufficient to permit appellate review.

Mother argues that the district court abused its discretion by omitting certain holidays and special days from the holiday parenting-time schedule without making findings explaining why it omitted those holidays. The district court included seven holidays in its holiday parenting-time order but omitted 12 holidays and special days that one or both parties requested that the court address. Among the holidays the district court

omitted are Martin Luther King Jr. Day and Juneteenth, which mother argues are particularly important because the parties and the child are African American.

In general, "to the extent practicable an order for parenting time must include a specific schedule for parenting time, including . . . holidays." Minn. Stat. § 518.175, subd. 1(e) (2022). As with all aspects of a parenting-time schedule, district courts must set a holiday schedule that "will enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child." *Id.*, subd. 1(a) (2022); *see also Anderson v. Archer*, 510 N.W.2d 1, 6 (Minn. App. 1993) (Davies, J., concurring) (stating that district courts should give particular thought to "where the children would get the most benefit, holiday by holiday," and suggesting factors for consideration).

Because "holidays and other special days are distinct from the rest of the parenting schedule," district courts should make findings of fact explaining why the holiday schedule is in the best interests of the child. *Suleski v. Rupe*, 855 N.W.2d 330, 338 (Minn. App. 2014). "Findings should assure that the relevant statutory factors have been addressed, satisfy the litigants that their case was fairly resolved, and permit reasoned appellate review." *Hesse v. Hesse*, 778 N.W.2d 98, 104 (Minn. App. 2009); *see also Kucera v. Kucera*, 146 N.W.2d 181, 183 (Minn. 1966) ("It is not within the province of [appellate courts] to determine issues of fact on appeal.").

Because the district court's order does not include findings of fact explaining its decision to omit some holidays and special days from the holiday parenting-time schedule while including others, we are unable to review that issue on appeal. Therefore, we remand to the district court to make findings and provide its rationale. On remand, the district court

shall have discretion to reopen the record as to this issue, amend the holiday parenting-time schedule, and make any corresponding adjustments to the child-support award it deems necessary.

**III.    The district court acted within its discretion with respect to the vacation parenting-time schedule.**

Mother argues that the district court abused its discretion by limiting vacation parenting time to two weeks with each parent, taken consecutively in the month of July, without making findings explaining the limitation. She asserts that (1) vacations should not be limited to a summer month when the child is not yet school-aged; (2) there is no reason to require that the vacations be taken consecutively; and, (3) although July is an appropriate time for father to exercise vacation parenting time because he works in education, the limitation is impractical for her because her work schedule may not be as flexible.

Mother is incorrect that the district court limited vacations to the month of July; rather, the district court reserved July for guaranteed vacation time and provided that the parties could agree to additional or different vacation time. Mother does not explain why consecutive vacations are not in the best interests of the child. She also does not explain why July is not feasible for her—the district court found that both parties would be able to exercise vacation parenting time in the summer, and there is no evidence in the record to the contrary. We therefore conclude that the district court did not abuse its discretion with respect to the vacation parenting-time schedule.

In sum, we affirm the district court's order granting joint legal custody, joint physical custody, and equal parenting time. We also affirm the vacation parenting-time schedule. But because the district court did not make findings relevant to the holiday parenting-time schedule, we remand for further findings on that issue consistent with this opinion.

**Affirmed in part and remanded.**